J. S. Cornell & Son, Inc., Appellant, *v.* Rosenwald.

Argued April 10, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Warwick Potter Scott,* with him *Frederic L. Ballard,* of *Ballard, Spahr, Andrews & Ingersoll,* and *Knox Henderson,* for appellant.

*Philip Werner Amram,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE LINN, May 22, 1940:

This is a suit for a balance claimed for a contractor's services in building a residence and appurtenances for defendant. It is alleged that the parties met in April, 1937, and discussed the project; it was proposed that the contractor should furnish materials and perform the contract on a cost-plus basis; the interview resulted in the understanding that the probable cost of the project would be $330,500, and that plaintiff should receive a contractor's fee of $25,000 for its services. Defendant's architect participated in the conference but at that time had not worked out detailed plans and specifications. Shortly afterward, plaintiff was notified it had been awarded the contract and on April 22, 1937, as appears by defendant's petition, to be referred to later, a paper

entitled a "Building Agreement," Exhibit A to defendant's petition, was executed. They also executed, as part of the building agreement, an instrument entitled "The General Conditions of the Contract for the Construction of Buildings," Exhibit B to defendant's petition. The plaintiff avers that on May 11, 1937, when the work of construction began, "no completed plans or specifications for any part of the said operation were supplied to plaintiff Company, and as the work progressed the magnitude and cost of the mansion and of its component parts and appointments and of its outlying appurtenances and complementary buildings were vastly increased, and continued to be increased from time to time as the work progressed by the specific direction and order of Grunsfeld [the architect] and of defendant; so that when the work was eventually completed and defendant and his wife were able to take up residence in the new mansion house the actual total cost of the entire project, instead of being $330,500, as originally planned and understood by Grunsfeld and plaintiff's representatives as aforesaid, based upon specific information supplied by Grunsfeld to plaintiff's representatives had been increased by $587,933.64, to make a grand total of $918,433.64."

Paragraph 17 avers "From time to time, as the magnitude of the job increased as aforesaid, plaintiff, through its agent Allen D. Cornell, mentioned to defendant's agent Grunsfeld that with the increase at the specific direction of Rosenwald and Grunsfeld in the actual cost of the job, plaintiff's fee would have to be correspondingly increased, and Grunsfeld expressed approval of, and assent to, the statements so made to him." The balance claimed by plaintiff is stated as follows: "19. A fair, reasonable, and customary percentage rate of fee, based upon a percentage of the total actual cost of construction, which in this instance was $918,433.64, as aforesaid is 7½% on the first $350,000 or $26,250, and 5% on the balance of $568,433.64, or $28,421.68,

making a total percentage fee compensation of $54,671.68 payable as of the date on which defendant and his wife moved into the new house, March 18, 1939. Defendant has paid to plaintiff a total of $25,000, leaving a balance of principal due in the sum of $29,671.68, with interest from March 18, 1939, to date of payment."

Instead of filing an affidavit of defense, defendant moved to require plaintiff to arbitrate: section 3 of the Arbitration Act of 1927, P. L. 381, as amended, 5 PS section 163. In his petition for the order to arbitrate, defendant averred that the parties had executed a written agreement by which plaintiff had agreed to demolish certain buildings on defendant's land and to erect "certain new structures thereon," all as set forth in the contract" Exhibit A, attached to the petition.* He alleged that "the contract consisted of a building agreement, marked Exhibit 'A', and also drawings and specifications as described in Article I thereof."

Plaintiff answered the petition, admitting the written contract, Exhibits A and B, but averring that the contract was "mutually abandoned . . . soon after the execution thereof" and that the services subsequently rendered, and for which compensation was demanded, were rendered in the circumstances alleged in the statement of claim.

---

* Article 1 of this agreement provided: "The Contractor shall and will provide all the materials and perform all the work for the demolition of the present residence dwelling and such other structures as the owner shall direct, the erection of a new residence, garage, library, greenhouse, tennis court, and swimming pool; the repair and remodeling of two structures for chauffeur's and gardener's quarters, outside grading drives and garden walls, and the erection of a wire fence on the property of owner, . . . as shown on the drawings and described in the specifications to be prepared by ERNEST A. GRUNSFELD, JR. of Chicago, Illinois, Architect, which drawings and specifications are to be identified by the signatures of the parties hereto, and become hereby a part of this contract."

After hearing argument on the petition and answer an order was made requiring arbitration from which plaintiff appeals.

It is unnecessary to deal particularly either with plaintiff's contention that the abandonment of the contract carried with it the arbitration provisions, or with defendant's reply that the abandonment is not sufficiently alleged to deprive him of the right to arbitrate plaintiff's claim for the increased fee. We say it is unnecessary because the order to arbitrate can only be sustained if the parties have agreed that the issue in dispute shall be submitted to arbitration. That issue, as claimed in plaintiff's statement, is whether the contractor is entitled to additional compensation for services rendered beyond what was originally contemplated by the parties. Whether such a dispute is covered by the arbitration provisions is a question of law—the construction of the writing.

The written contract not only does not provide for the arbitration of all disputes that may arise in the performance or non-performance by either party, but provides for arbitration in only three cases. They are specified in Article XII of Exhibit A, the building agreement. It provides: "Art. XII. In case the Owner and Contractor fail to agree in relation to matters of payment, allowance or loss referred to in Arts. III or VIII of this contract, or should either of them dissent from the decision of the Architect referred to in Art. VII of this contract, which dissent shall have been filed in writing with the Architect within ten days of the announcement of such decision, then the matter shall be referred to a Board of Arbitration. . . ."

The Article III, so referred to, provides: "No alterations shall be made in the work except upon written order of the Architect; the amount to be paid by the Owner or allowed by the Contractor by virtue of such alterations to be stated in said order. Should the Owner and Contractor not agree as to amount to be paid

or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in Art. XII of this contract."

Articles VIII and VII, also referred to in Article XII, need not be quoted; they deal with disputes about the amount to be paid, and by whom, for loss resulting from delay, matters not now involved in the case. We are concerned only with the meaning of Article III dealing with payment or allowance for alterations made in the work.

The rule is that arbitration agreements are strictly construed and are not to be extended by implication. In *Jacob v. Weisser,* 207 Pa. 484, 489, 56 A. 1065, in limiting the jurisdiction of an architect, the court quoted *Chandley Bros. v. Cambridge Springs,* 200 Pa. 230, 49 A. 772, that "The terms of the agreement are not to be strained to discover it. They must be clear and unmistakable to oust the jurisdiction of the courts; for trial by jury cannot be taken away by implication merely in any case." For other applications of the rule, see *Somerset Boro. v. Ott,* 207 Pa. 539, 56 A. 1079; *Hunn v. Penna. Institution,* 221 Pa. 403, 411, 70 A. 812; *Ruch v. York,* 233 Pa. 36, 46, 81 A. 891; *Kann v. Bennett,* 234 Pa. 12, 23, 82 A. 1111; *Zimmerman v. Marymor,* 290 Pa. 299, 302, 138 A. 824.

The application of those rules of construction requires us to hold that Article III does not provide for the arbitration desired by defendant. It states that the contractor shall make no alteration in the work except on the architect's written order and provides that if the contractor is dissatisfied by the amount of the payment fixed by the architect in the order calling for the alteration, the contractor may appeal from the architect to the arbitrators on the subject of the amount and that, meanwhile, the contractor must proceed with the alteration requested by the architect. This provision obviously deals with work that has been performed or

is in process of performance. The reasonable interpretation is that the parties contemplated situations where, after portions of the work had been completed, or were in process, the owner might change his mind and desire something else substituted. It is important to note that, in ordering the alteration, the architect, who alone can order it, must state in the order "the amount to be paid by the owner or allowed by the Contractor by virtue of such alterations." We cannot hold that by such a provision the parties contemplated authorizing the architect to increase the cost of the project by half a million dollars and to state in the alteration order or orders the amount the contractor should receive for the "alteration."

To hold with the defendant would require us to say that the parties meant, not alterations in the work, but changes in the general plan and specifications even to a complete revision of the original project, which, as suggested above, is too impracticable to have been contemplated by the words used in Article III. Moreover, the same construction results if the provision is read in connection with Article 15 of "The General Conditions of the Contract for the Construction of Buildings," which is defendant's Exhibit B. It will then also appear that the word "work" was not used as synonymous with project.

It is impossible to comply with the applicable rule quoted above and at the same time hold that defendant's petition can be granted. Whether plaintiff can recover reasonable compensation for work done beyond that originally contemplated is not the subject of arbitration because the parties have specifically restricted the nature and scope of the disputes to be arbitrated and the present dispute is not one of them.

The order appealed from is reversed and the record is remitted for further proceedings.

CONCURRING OPINION BY MR. JUSTICE STERN:

While this is a concurring opinion in the sense that I agree that the order of the court below should be reversed, I am not in accord with the view adopted by the court in reaching that conclusion.

The contract provides that "No alterations shall be made in the work except upon written order of the Architect; the amount to be paid by the Owner . . . by virtue of such alterations to be stated in said order. Should the Owner and Contractor not agree as to amount to be paid . . ., the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration, . . ." The work was to be done at the "net cost" of the labor and materials, plus a fee to the contractor of $25,000. "The amount to be paid by the owner" would necessarily, therefore, have to take into consideration the question of any addition to the contractor's charge by reason of such alterations, and that question would thus come directly within the scope of the arbitration provision. The court takes the position that by the word "alterations" the parties could not have intended such drastic changes as were here made in the original project, but contemplated only alterations in work already performed or in process of performance. I see no basis for such a construction, nor any practical reason why the parties should have desired so to limit the scope of the arbitration clause. Moreover I do not see how, as a matter of law, the court can definitively interpret the phrase "alterations in the work" in the absence of evidence which will presumably be available to show how the parties themselves construed it by their declarations and conduct during the progress of the building operation. Indeed, neither in the statement of questions involved nor in the argument did the very able counsel of appellant so much as suggest the proposition upon which the opinion of the court now proceeds.

It seems to me that this is clearly a case where "the making of the arbitration agreement, or the failure, neglect, or refusal to perform the same," is at issue (section 3, Act of April 25, 1927, P. L. 381). In such case the act provides that the court should proceed summarily to the trial of that issue, such trial to be by jury where, as here, a jury trial has not been waived. The decision of the court is to the effect that, even if the contract was not abandoned by the parties, there is no provision therein for arbitration governing the present controversy between them, but, in my opinion, the arbitration clause does cover that dispute, and therefore I would have the question preliminarily submitted to a jury as to whether or not that clause was expressly or impliedly abrogated, and whether, therefore, appellant was or was not justified in refusing to proceed to arbitration thereunder.

Mr. Justice MAXEY joins in this opinion.