## Schreiber v. Ostroff

*Joseph T. Coghlan, Jr.*, for plaintiff.
*Irving R. Segal*, for defendant.

CRUMLISH, J., July 24, 1948.—This is an action to enforce specifically an agreement to arbitrate under section 3 of the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §163. The case was heard after petition and answer and waiver of a jury trial. Exceptions to the findings of the trial judge in dismissing plaintiff's petition have been dismissed by this court.

The following facts were disclosed by the pleadings, the testimony of the witnesses, and other evidence produced at the trial. Plaintiff and defendant were partners in various enterprises, trading under the names Auto Owners Finance Company and American Auto Finance Company. In July 1945 they ceased operating as partners and, after negotiations, entered into a written agreement of dissolution, dated January 12, 1946, pertinent provisions of which stated:

"12. All books and records of the AMERICAN AUTO FINANCE CO., a Corporation, AUTO OWNERS FINANCE CO., a Corporation, AMERICAN AUTO FINANCE CO., a Partnership, AUTO OWNERS FINANCE CO., a Partnership, and AMERICAN REALTY COMPANY, a Partnership, shall be stored with Fernald & Co., who have been the accountants for the said firms, so that same may be made available for future examination by the Internal Revenue Department or any other proper Governmental Agency. Parties agree to equally pay Fernald & Co. for compensation for future State and Federal examinations. If assistance is required by former employees, their compensation which shall be borne equally by the parties hereto, shall be paid them. The parties hereto with their respective counsel and accountants shall at all times have access to the books and records of the said corporations and firms." .

"24. Parties hereto agree to share equally the expense of any valid claims against the partnerships herein mentioned or their predecessor corporations, which may hereafter be made.

"25. Any disputes which may arise hereunder and any detail of dissolution which have not been provided for herein and cannot be settled by agreement between the parties shall be referred to Dr. Samuel Neff and Mr. Maxwell Waitsman or the survivor for disposition, and both parties agree to accept their decision as final."

In May 1946, four months after the agreement, both parties were called to a conference at the Department of Revenue concerning amended partnership and individual income tax returns for 1943 and 1944. Plaintiff, as active partner possessing personal knowledge of the accounts, had filed the original partnership returns, negligently (as was later determined by the Department of Revenue) failing to include information concerning certain items of partnership income and profit. The Federal agent considered the question of whether the discrepancy was due to fraud or mere negligence. The claim of fraud, which carries a penalty of 50 percent and possible criminal prosecution, was not pursued. After minor adjustments, the amended returns were accepted for tax purposes and in addition the individual partners paid a negligence fine of five percent.

A review of Federal income tax returns is not in its nature a claim but merely an examination which might result in either a claim or a refund. A partnership pays no income tax in any event. Partnership returns, like trust returns, are purely informational. The payment of income tax based thereon is an individual liability of the partners.

Following the tax conference, the partners engaged as legal counsel the same lawyers who had been acting for them in disputes arising out of dissolution and whose fees, by agreement, had been paid out of partnership funds and shared equally.

It is defendant's contention that, in the adjustment of amended income tax returns for the years 1943 and 1944, she engaged her own counsel, Leo Weinrott, to whom she paid a fee of $500, and that plaintiff engaged White & Williams to represent him in the matter and plaintiff is alone liable for the $5,000 fee which he has paid them for that service. Plaintiff, on the other hand, contends that, although Leo Weinrott repre-

sented defendant as an individual, White & Williams represented only the partnership and not plaintiff personally. Plaintiff, therefore, demanded that defendant pay $2,500 as her share of a valid claim against the partnership under paragraph 24 of the agreement of dissolution. Upon refusal, plaintiff called for reference of the dispute to the arbitrators named in paragraph 25 of the agreement. Defendant's refusal led to the filing of plaintiff's petition under section 3 of the Act of 1927 supra.

The sole question to be determined by the court is whether the dispute as to the $5,000 legal fee paid by plaintiff to White & Williams is within the scope of the arbitration clause of the dissolution agreement. Did it represent "the expense of any valid claims against the partnerships"? Was it a dispute "arising under" the dissolution agreement or a "detail of dissolution" not provided for therein? The ruling of the court in the instant case is a proper one if the dispute does not fall within the arbitration clause of the contract.

It is a well-established principle of law that the interpretation of the scope of an arbitration agreement is ordinarily for the court and not the arbitrators themselves, unless it has been otherwise expressly provided by agreement: J. S. Cornell and Son, Inc., v. Rosenwald, 339 Pa. 18 (1940); see 3 Am. Jur. 868, §41; Sturges, Commercial Arbitrations and Awards, p. 145, sec. 45 (1930).

The scope of the matters submitted to arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally: 6 C. J. S. §§27 c and 80 b; Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284, 169 N. E. 386, per Cardozo, P. J.

". . . in order to ascertain that intention of the parties, the court may take into consideration the surrounding circumstances, the situation of the parties,

the objects they apparently have in view, and the nature of the subject matter": Slonaker v. The P. G. Publishing Co., 338 Pa. 292, 296 (1940), per Mr. Justice Stern, quoted with approval in Lucacher v. Kerson et al., 158 Pa. Superior Ct. 437, 440 (1946).

What norm, if any, should be applied by the court in evaluating the intention of the parties in the instant case? Both plaintiff and defendant cite respectable authority for their positions. Plaintiff contends that although prior to the Arbitration Act of April 25, 1927, Pennsylvania courts had construed arbitration agreements strictly, since that time the policy of the Commonwealth has been changed and it is now held that an arbitration agreement should be liberally construed so as to give effect to the primary intention of the parties and every reasonable intendment should be in favor of its validity. See Bashford v. West Miami Land Co., 295 Pa. 560, 568 (1928), Nippon Ki-Ito Kaisha, Ltd., v. Ewing-Thomas Corp., 313 Pa. 442 (1934), and Britex Waste Co., Ltd., v. Nathan Schwab & Sons, Inc., 139 Pa. Superior Ct. 474, 484 (1939). On the other hand, defendant's contention is that "arbitration agreements are strictly construed and are not to be extended by implication," (Margolies v. Zimmerman et al., 341 Pa. 493, 496, (1941)), and that the " 'terms of the agreement are not to be strained to discover it'." (i. e., power of arbitrators to pass on subject matter). " 'They must be clear and unmistakable to oust the jurisdiction of the courts; for trial by jury cannot be taken away by implication merely in any case' ": Cornell v. Rosenwald, supra, page 23.

"Upon reference to the cases . . . it may be concluded, depending upon notions of what constitutes strictness of construction in such cases, that the Pennsylvania and New York courts strictly construed the arbitration clause in some cases and not in others."

Sturges, Commercial Arbitrations and Awards, sec. 47, p. 157 (1930). More recent cases warrant no modification of Professor Sturges' viewpoint. A careful reading, however, of the Pennsylvania decisions reveals less conflict than would readily appear. The ratio decidendi of the cases was not based upon either a "liberal" or a "strict" construction of the arbitration agreements but rather upon a careful analysis of the wording of the referral clauses in the light of the surrounding circumstances in each case as indicative of the intent of the parties to the agreement.

Applying this method to the language of the arbitration agreement and the circumstances surrounding the dissolution of the partnerships in the instant case, it is clear that the employment of counsel to protect the partners from *individual tax liability* was not within the contemplation of the parties at the time of entering into the agreement of dissolution. The agreement was for the sole purpose of dissolutions of the partnerships. Therefore, the phrase (paragraph 25) "any disputes which may arise hereunder and any detail of dissolution which have not been provided for herein" refers exclusively to partnership matters. This intention is further clarified by paragraph 24 which provides that the parties shall share equally "the expense of any valid claims against the partnerships." It is true that paragraph 12 provides for the storage of partnership books and records with the partnership accountants and that the partners share equally the compensation to them, as well as former employes, for future State and Federal examinations. In the instant case, however, no expense was incurred involving any possible claim against the partnerships. The only possible tax claims would be against the partners as individuals. Defendant hired and paid her own counsel. No mention is made of the sharing of legal fees incurred to defend the individual partners against tax

claims, nor can any be reasonably implied. Plaintiff's counsel ingeniously contends that the adjustment of the amended partnership returns was a statutory duty of the partnership and that the expense incurred by performing this duty was in itself a valid claim against the partnership, despite the fact that no partnership liability was involved. However, if the minor adjustments made in the amended partnership returns, for the purpose of determining the tax liability of the partners, involved the performance of this legal duty, it is apparent that it was but incidental to the adjustment and settlement of plaintiff's own individual tax liability, concern for which was expressed by plaintiff's counsel as a witness under cross examination.

This realistic interpretation of the agreement was confirmed by the testimony of the parties and their witnesses at the trial. In the various disputes between the partners concerning dissolution it was agreed by the partners that their attorneys be paid equally out of partnership funds. Yet, in the tax return matter, plaintiff's counsel neither consulted defendant's counsel about the $5,000 fee nor offered to share it. At no time did the attorneys act in conjunction for the partnership in these matters. This is in contrast to the actions of the same attorneys regarding a missing book of the partnership required by the government during the course of the investigation. Plaintiff's counsel called defendant's counsel to inform him that the missing book could be reconstructed by the accountant from original records and asked whether defendant's counsel would object to having the cost of reconstruction considered a partnership expense. Defendant's counsel agreed that it was proper.

Furthermore, the conduct of the parties is proper for consideration in determining their intention. Final meeting for dissolution was held in plaintiff's counsel's office in December 1946. At that time the tax matter

had not been finally settled, but the inevitability of a bill for legal expenses incurred therein was known to both plaintiff and his counsel. It was surely no minor matter and yet it was not even mentioned. Furthermore, the parties had each placed $2,500 on deposit with the arbitrators to cover unforeseen subsequent expenses of the partnership. Yet this money was returned to the parties *after* plaintiff had received his bill from White & Williams. The sharing of this fee appears to have been an afterthought not in the minds of the parties either at the time of the making of the agreement or at the final meeting for dissolution of the partnerships.

It is clear that the parties never intended by their agreement of dissolution to submit to arbitration the issue raised in the instant case. Therefore the ruling of the court that it be not so referred is a proper one.