Wm. Linker Co., Inc., Appellant, *v.* Feinberg et ux.

Argued November 9, 1948. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Samuel I. Sacks,* with him *Sacks & Piwosky,* for appellant.

*Michael M. Linden,* with him *Norman Snyder,* for appellees.

OPINION BY MR. JUSTICE JONES, January 3, 1949:

The plaintiff, a contracting company, sued to recover a balance allegedly due by the defendants for alterations and additions made by the plaintiff to a property of the defendants under a written contract and, also, for certain extras under change-orders supplemental to the contract.

In reliance upon Sec. 2 of the arbitration act of 1927, P. L. 381, as amended by Sec. 1 of the Act of June 21, 1935, P. L. 400 (5 PS § 162 Pkt. Part), the defendants petitioned the court, wherein the suit was pending, to require the plaintiff to submit its claim to arbitration in accordance with cited terms of the contract pleaded by the plaintiff. The court granted a rule on the plaintiff to show cause which, after argument, was made absolute. The plaintiff appealed and assigns here for error the order making the rule absolute.

The original contract of the parties provided, inter alia, that "No alterations shall be made in the work except upon written agreement by the Owner and Contractor, the amount to be paid by the Owner or allowed by the Contractor by virtue of said alterations to be stated in said agreement" and that ". . . no extra charge

or claim shall be made by the Contractor for any extra work done, whether called for in this Agreement or not, unless by written Agreement made between the parties hereto in respect thereto, and when any extra work is so agreed upon, the agreement in reference to the same shall be considered a separate contract or contracts, in no way altering or affecting the terms of this contract and the waiver of a right to file a lien, together with the authorization referred to in the next preceding article." The authorization "in the next preceding article", so referred to, was a warrant of attorney empowering the owners to mark satisfied of record any lien or claim that the contractor might file against the property. The contractor further expressly agreed that "if it shall delay the progress of the work so as to cause loss for which the Owner shall become liable, then it shall reimburse the Owner for such loss. Should the Owner and Contractor fail to agree as to the amount of the loss comprehended in this Article, the determination of the amount shall be referred to arbitration as provided in [the contract]." The provision for arbitration reads as follows: "In case the Owner and Contractor fail to agree in relation to any portion of this contract, then the matter shall be referred to a Board of Arbitrators, . . . .' This article further prescribed the method of selecting arbitrators and provided that a decision of any two of them should be "final and binding on both parties" to the contract.

Of the total amount of the plaintiff's claim, approximately one-third thereof was for an unpaid balance of the original contract price. The remaining two-thirds represents charges for extras under three separate change-orders, one of which was not assented to by the plaintiff because of disputed items of credit claimed therein by the owners in a relatively small aggregate amount.

In the petition for a reference of the controversy to arbitration, the defendants alleged that they were damaged in a substantial itemized sum because of delay attributable to the plaintiff in the performance of the contract and that they were also entitled to greater credits in the change-order from which the plaintiff had withheld its assent. The plaintiff answered the petition for arbitration and averred that the delay in the completion of the contract was the fault of the defendants and not of the plaintiff and that the credits to the defendants, as allowed by the plaintiff's complaint, were correct.

The appellant contends that the pleadings do not present a case for arbitration, first, because the change-orders constituted "separate . . . contracts, in no way altering or affecting the terms of [the original] contract . . ." and, second, because the matter of damages to the owner due to delay in the performance of the contract is not in issue, the plaintiff, by its answer, having traversed the allegations of the defendants in such regard and the latter not having supported their allegations thereafter by depositions. The appellant argues that, in consequence of the state of the pleadings, damages to the owners for delay is no longer an issue by reason of the provisions of Rule 209 of the Pennsylvania Rules of Civil Procedure with respect to the failure of a moving party to deny the averments of a responsive answer. There is no merit in either contention.

It is true, as the appellant reminds us, that agreements to arbitrate are to be construed strictly and are not to be extended by implication: *Margolies v. Zimmerman,* 341 Pa. 493, 496, 19 A. 2d 737, and *J. S. Cornell & Son, Inc. v. Rosenwald,* 339 Pa. 18, 23, 13 A. 2d 716. But, it is equally true, since the Act of 1927, supra, which ordains the validity, irrevocability and enforceability of contractual provisions for arbitration in re-

spect of a controversy arising out of the subject matter of the contract, that ". . . every reasonable intendment will be made in favor of the validity of such agreements [citing case]": *Bashford v. West Miami Land Co.*, 295 Pa. 560, 568, 145 A. 678. In the present instance the concern of the contracting parties, as evidenced by their writing, with respect to the status of change-order agreements as separate contracts was that such agreements should not alter or affect the terms of the prime contract, and not that controversies so arising were to be excluded from the arbitration provision of the contract. The intent of the parties in pertinent relation is clear. Moreover, the change-order agreements themselves consonantly so confirm. In each of the first two change-orders the contractor accepted the owners' written authorization "To proceed with the following addition to the original contract." The third change-order did not contain a like authorization, but that is readily understandable as that writing did not cover additional work to be done but merely stated an account of adjusted debits and credits for certain extras and eliminations already made. The conclusion properly follows that controversies arising out of the change-order agreements were referable to the arbitration contemplated by the prime contract.

The controversy over the damages claimed by the defendants for delay in the performance of the contract comes within the express terms of the provision for arbitration. Obviously, therefore, the instant case differs materially from the *Cornell* case, supra, upon which the appellant so largely relies. Nor was the present controversy eliminated as a subject of arbitration merely because the defendants did not file a reply denying the averments of the plaintiff's answer to the rule for arbitration. By their petition, the defendants had directly placed the blame for the damaging delay upon the plaintiff while the latter, by its answer, conceded delay

in contract performance but charged the fault therefor to the defendants. Thus was defined the issue of responsibility which satisfied the court that the matter was one for arbitration under the terms of the contract. And, that is all that the procedural amendment of 1935, supra, required in the circumstances. It was not the intent of that Act that the court to which application is made for contractually specified arbitration should adjudicate the basic issues in dispute upon depositions. A determination of the controversy is the intended office of the arbitration approved by the statute.

The order is affirmed at the appellant's costs.