## Electrical Switchgear Union v. I-T-E Circuit Breaker Co.

*Kenneth L. Stein,* for plaintiff.
*Robert M. Landis,* for defendant.

SLOANE, P. J., September 15, 1964.—Plaintiff union seeks to enforce an arbitration provision, article XIV, in its employment contract agreement with defendant employer which provides for the arbitration of "disputes as to the interpretation of the terms of this Agreement".[1]

The dispute centers around certain employes who claim participation in the employe retirement plan though they devote some of their work-time to union matters. These employes according to the union are "employes" under article VII of the employment contract:

"Employees of the Company who reach the age of sixty-five (65) shall retire under the provisions of the Employee Retirement Plan . . . It is a condition of employment that employees enroll in the Retirement Plan and continue their participation while they are active employees . . ."

Despite this reference in the employment contract of the employe retirement plan, defendant-employer claims it should not be required to arbitrate the query, are the disputed employes included in the employe retirement plan, since the plan's provisions in the main are set forth in a separate document which is not part of the employment contract itself. Defendant employer asserts also that plaintiff union is seeking, by its action, to compel expansion of the group of employes in-

---

[1] The arbitration clause in contention provides as follows:

"Article XIV. Arbitration—Disputes.

"*Section I.* Should any dispute arise between the Union and the Company as to the interpretation of the terms of this Agreement, the parties shall confer and any decision mutually reached thereby shall be reduced to writing and when signed by both parties shall be binding thereon.

"*Section II.* In the event that the Company and the Union shall not be able to reach an agreement on disputes as to the interpretation of the terms of this Agreement, arbitration shall be resorted to as follows: . . ."

cluded in the retirement plan; such an expansion, according to defendant employer, would be the proper subject of collective bargaining when, in due course, contract negotiations are reopened.

I do not say the union is right; I do not say the employer is right; all I do say is that an arbitrator or arbitrators, after hearing the matter, should determine who is right. I may have the student's disposition of deep inquiry into the matter, but, with due respect for relevancy, I am not here concerned with the outcome of the controversy. I think the matter is a subject of decision by arbitration.

First, it seems to me that the retirement plan was incorporated into the employment contract. Cf. Shaw Executors v. Cornman, 271 Pa. 260 (1921), "sales agreement" composed of several letters held sufficient for Statute of Frauds purposes since all the relevant data was included in the correspondence taken as a whole: 4 Williston on Contracts, Third Ed. §§580-83. The doctrine of incorporation by reference bears the judicial touch primarily in commercial contracts and wills; but I am afforded no reason for such limitation and, applying it in the instant case, the provisions of the employe retirement plan are incorporated into the employment contract by reason of the reference to the retirement plan in article VIII, sec. I, titled "Employe Retirement Plan," of the employment contract. The "terms" in article VIII, sec. I, derive their meaning wholly from the retirement plan; to exclude the retirement plan from incorporation into the employment contract would be to render the whole of article VIII, sec. I, of the employment contract, title "Employee Retirement plan," outside the arbitration requirement simply because the full provisions of the retirement plan were not included, perhaps only for convenience sake, within the body of the employment contract. Such nicety of thought provides no understanding.

Although "It is true . . . that agreements to arbitrate are to be construed strictly and are not to be extended by implication" (see Wm. Linker Co. v. Feinberg, 360 Pa. 601, 604, citing Margolies v. Zimmerman, 341 Pa. 493, 496, and J. S. Cornell & Son, Inc. v. Rosenwald, 339 Pa. 18, 23), the problem still remains one of contract interpretation. And, in a doubtful case, a legislative policy favoring arbitration should tip the balance in favor of arbitration of a particular dispute. The State legislature has articulated a policy which gave dignity and status to the compensating virtues of unhostile, if not amicable, settlement of disputes by arbitration. In 1927, the State legislature enacted an Arbitration Act, and it says: "A provision in any written contract . . . to submit to arbitration any controversy . . . shall be valid, irrevocable, and enforceable . . .": 5 PS §§161, et seq. See also Wm. Linker Co. v. Feinberg, supra.

Our Supreme Court has fulfilled the act's beneficent purpose, going to the length of holding that the act's exception of "personal service" contracts does not extend to collective bargaining agreements. "The 'personal services' exclusion can only be taken to apply to the employe's own contract of employment; otherwise construed, would be to write into the meaning of a collective bargaining agreement something never intended by the parties": Amalgamated Assoc. of Street, Elec. Ry., & Motor Coach Employees of America v. Pittsburgh Ry. Co., 393 Pa. 219, 224, cert. denied, 358 U. S. 882. And a look at section 301 of the Federal Labor Management Relations Act, 29 U. S. C. A. §185a, evinces a resolution in labor disputes to favor arbitration. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U. S. 574 (1960), "doubts should be resolved in favor of coverage."

Since the dispute here concerns the eligibility of certain employes to participate in the employe retirement

plan and the employment contract refers to employes generally, the sturdy question is, who are employes, and, necessarily, the dispute concerns the interpretation of a term of employment contract and is, as a consequence, arbitrable. The employment contract concerns employes and what concerns employes is the subject of arbitration. Article VII is not barely a remote advertence and nothing more. Retirement and pension is too much a part of man's work life to be dealt with by only a random reference.

Again, our Supreme Court, in a case seemingly stronger against arbitration than the one in our hand (Wm. Linker Co. v. Feinberg, 360 Pa. 601), ruled in favor of arbitration. In Linker, the parties had signed a building contract containing an arbitration clause which provided for the submission to a board of arbitrators of disputes when "the Owner and Contractor fail to agree in relation to any portion of this contract." The contract also said that the contractor would be prohibited from filing claims for extra work unless both parties had signed a writing incorporating the change; such writings were to be considered "separate . . . contracts in no way altering or affecting the terms of [the original] contract." The court held that disputes on the change order writings were arbitrable notwithstanding the limitation of the arbitration clause, limiting it to disputes concerning the primary contract, and the declaration in the contract that the change order writings were to be considered separate contracts. The court's conclusion was based upon its interpretation of the parties' intent; but it also noted that "every reasonable intendment will be made in favor of the validity of such [arbitration] agreement": Page 605. The Linker case, considered in conjunction with the legislative policy favoring arbitration of disputes, supports a finding here that, even though the specific provisions of the retirement plan

are in the plan and not in the employment contract itself, the parties intended to submit any dispute concerning it to arbitration.

Defendant employer asserts issues of fact which it says must be resolved, e.g., whether or not the union negotiated effectively prior to seeking arbitration. Whether or not effective negotiation is a condition precedent to the appointment of an arbitrator is a question of the intent of the parties. See Mack Mfg. Corp. v. International Union UAW, 368 Pa. 37, a holding that whether or not defendant union was required to file a list of employes on behalf of whom it was entering a grievance before the matter could be referred to arbitration was a subject for the arbitrator; Britex Waste Co., Ltd. v. Nathan Schwab & Sons, Inc., 139 Pa. Superior 474, clause providing that disputes "will be settled amicably, or if this should not be possible by arbitration" not definite enough to make a formal offer to settle amicably a condition precedent. Cf. Insurance Agents' Int'l Union, A. F. of L. v. Prudential Ins. Co., 122 F. Supp. 869, arbitrator should decide whether plaintiff's failure to comply with procedure in filing too late would defeat its claim.

Here, plaintiff union asserted numerous meetings of the parties; defendant-employer does not deny the meetings, but gives the subject matter of the meetings a different construction than does plaintiff union. Plaintiff union alleges in paragraph seven of its complaint that meetings have been held to discuss the problem, i. e., the participation of certain employes in the employe retirement plan. Defendant employer says that plaintiff union was actually seeking to negotiate a new agreement and that the inability to negotiate a new agreement is not the proper subject for arbitration. It would seem proper to infer from all this that any preliminary negotiations, if required, had taken place. Besides, there is no indication in the text of the

arbitration clause of the employment contract that the parties intended the court to make a formal finding that preliminary negotiations were necessary; it is not clear that preliminary negotiations are a condition precedent to formal arbitration.

On any ground, the showing is that the parties have complied with the arbitration requirements of the employment contract.

My comprehension of the matter is that arbitration is the course to pursue.