J-A03016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LE VIN COMPANY, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BLUE STAR WINE COMPANY, | : | |
| ONLINEKOSHERWINE.COM, RUVANE | : | |
| RIBIAT, SHAINDY RIBIAT AND | : | No. 1062 EDA 2017 |
| CHAIM TZVI ROSENBERG, | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered March 10, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  May Term, 2016 No. 3492

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED MARCH 23, 2018**

Appellants Blue Star Wine Company ("Blue Star"), Onlinekosherwine.com, Ruvane Ribiat, Shaindy Ribiat, and Chaim Tzvi Rosenberg appeal from the order of the trial court overruling their Preliminary Objections to the Complaint filed by Le Vin Company, LLC ("Le Vin") for breach of contract and related torts. Appellants sought to compel arbitration by a *beth din*, a "rabbinical court or arbitration forum that imposes and interprets Orthodox Jewish law." Preliminary Objections, filed Sept. 20, 2014, at ¶ 8.[1] Because Appellant's allegations in their Preliminary Objections are insufficient

---

* Retired Senior Judge assigned to the Superior Court.

[1] **See also** 81 A.L.R.6th 1 (2013) (discussing applications of Jewish law in civil courts).

to make out a claim that there was an enforceable arbitration agreement, we affirm.

The underlying dispute in this case involves the sale of a kosher wine store, Rosenberg's Judaica & Wine. On May 30, 2014, Le Vin and Blue Star entered into an asset purchase agreement transferring ownership of the business from Blue Star to Le Vin. Ruvane Ribiat was an individual party to the transaction, and also signed the agreement on behalf of Blue Star, as President. *See* Agreement of Sale, filed May 30, 2014, at 25.

Disputes arose following the sale, and Le Vin filed suit claiming breach of contract, fraud, violation of a restrictive covenant/non-compete-clause, and tortious interference with a contractual relationship. Le Vin listed as defendants Blue Star; Ruvane Ribiat; Shaindy Ribiat and Chaim Tzvi Rosenberg, who are allegedly shareholders and officers in Blue Star; and Onlinekosherwine.com, which is allegedly owned and operated by Rosenberg, the Ribiats, and members of their family. *See* Amended Complaint, filed Aug. 23, 2016, at ¶¶ 8, 12. Le Vin attached the Agreement of Sale to the Complaint, and again to an Amended Complaint. *See* Ex. A to Complaint, filed Jul. 29, 2016.[2] The Agreement did not contain an arbitration clause or refer to a *beth din*.

---

[2] Le Vin's first Complaint named only Blue Star, Ruvane Ribiat, and Onlinekosherwine.com as defendants. Le Vin's Amended Complaint added Shaindy Ribiat and Rosenberg.

On September 20, 2016, Appellants filed Preliminary Objections to Le Vin's Amended Complaint. In their first Objection, Appellants asserted the existence of an agreement for arbitration and requested that the trial court compel the parties to proceed with arbitration before the Orthodox Beth Din of Philadelphia (hereinafter the "Beth Din"). Preliminary Objections, filed Sept 20, 2016, at ¶ 20 (citing Pa.R.C.P. 1028(a)(6) and 42 Pa.C.S.A. §§ 7302(a), 7304(a), (d), and 7342).[3] Appellants also put forth preliminary objections on other grounds, which are not relevant to this appeal.

The factual allegations Appellants made in support of their Preliminary Objections summarized the contents of six letters, copies of which were attached as exhibits. The first letter, dated October 13, 2015, was from Rabbi Dov Brisman of the Beth Din and addressed to Jack Levin, the sole owner of Le Vin. **See** Agreement of Sale at 25. Rabbi Brisman stated that Ruvane Ribiat has requested that the Beth Din "summon" Levin for "clarification of sale issues." **See** Exhibit 2 to Preliminary Objections.

The second letter, dated March 28, 2016, was from the attorney who represented Le Vin regarding matters before the Beth Din, Jerome Marcus, to

---

[3] Rule 1028(a)(6) provides for a preliminary objection on the basis of "pendency of a prior action or agreement for alternative dispute resolution." Pa.R.C.P. 1028(a)(6). The official note to the rule states that [a]n agreement to arbitrate may be asserted by preliminary objection or by petition to compel arbitration pursuant to the Pennsylvania Uniform Arbitration Act" ("PUAA"), 42 Pa.C.S.A. § 7301-7320 (under 42 Pa.C.S.A. § 7304), or the common law (under 42 Pa.C.S.A. § 7342(a)). **See id.**, note. As Appellants first Preliminary Objection was a request to compel arbitration, the parties refer to it at times as a Petition to Compel Arbitration.

Rabbi Brisman. Marcus stated that "efforts to settle this dispute have failed" and requested "that a date for the Din Torah be set." **See** Ex. 3 to Preliminary Objections. A *din torah* is a "legal case under Jewish law," held by a *beth din*. **See** Preliminary Objections at ¶ 10.

The third letter, dated August 16, 2016, was from Rabbi Brisman to the Philadelphia Court of Common Pleas, advising the court that the dispute "has been presented" to the Beth Din, which was currently trying to schedule the case. **See** Ex. 4 to Preliminary Objections.

The fourth letter, dated September 14, 2016, was from Marcus to Rabbi Brisman. Marcus expressed his hesitation with having the *din torah* on September 22, 2016, beginning at 3 p.m., given the number of witnesses and expense involved, and because Rabbi Brisman had indicated that he may decline to decide the case after hearing the expert's testimony. Marcus stated that Le Vin intends to search for a more appropriate *beth din*, and would be contacting the Beth Din of America. Marcus wrote, "I do want to assure you, however, that my client has no intention of failing to appear for a din torah." **See** Ex. 5 to Preliminary Objections at 1.

The fifth letter, dated September 18, 2016, was a response from Rabbi Brisman to Marcus. Rabbi Brisman stated that there "was clearly a misunderstanding" and that he and Marcus "had different impressions of what to expect." Rabbi Brisman approved of Marcus's plan to contact a different *beth din*, but advised that (pursuant to Orthodox Jewish law) Marcus should propose three options to Ruvane Ribiat, who could choose one. Rabbi Brisman

also instructed that Le Vin should not file charges with the Court of Common Pleas "except to guarantee that the statute of limitations not expire." **See** Ex. 7 to Preliminary Objections.

The sixth letter, also dated September 18, 2016, was from Rabbi Brisman to the Philadelphia Court of Common Pleas, and stated that "[t]he aforementioned case[] has been presented – with agreement of both parties – to the Orthodox Beth Din of Philadelphia. We are in the process of arranging the litigation hearing schedule." **See** Ex. 6 to Preliminary Objections.

In addition to summarizing these letters, Appellants' Preliminary Objections argued that "Mr. Ribiat and the other Defendants to this action have agreed to the *Din Torah* proceeding demanded by Plaintiff as an alternative means of resolving this dispute, and they have cooperated with the *Beth Din* in moving forward with the *Din Torah* proceeding." Preliminary Objections at ¶ 12. Appellants asserted in conclusion that "[b]y demanding alternative dispute resolution by means of a *Din Torah* before a *Beth Din*, and agreeing to that process, the parties have agreed to engage in an alternative dispute resolution proceeding that encompasses the entire controversy set forth in the Amended Complaint[.]" Preliminary Objections at ¶ 19. Appellants also argued that the *din torah* proceeding was already "underway with the participation and consent of all of the Parties hereto." **Id.**

Le Vin responded to the Preliminary Objections, rejecting the notion that there was a binding agreement to arbitrate in a *beth din* or that any formal arbitration had already begun. **See** Le Vin's Memorandum of Law in Opposition

to Appellants' Preliminary Objections, filed Nov. 15, 2016, at 7. Le Vin argued that the letters "show no more than preliminary discussions." Le Vin also argued that a *beth din* has no formal procedures and that the parties had not agreed to material issues such as who would decide the proceeding (that is, one rabbi or three, and which specific rabbis), the procedures to be followed, the scope of discovery, or the scope of the proceeding (*i.e.*, whether the tort claims would also be heard, or just the breach of contract claim). **Id.** at 7-8, 10-11.

Shortly following Le Vin's response to the Preliminary Objections, Appellants filed a Praecipe to Issue a Rule to Show Cause. Appellants claimed that issues of fact existed regarding the agreement to arbitrate, and cited Philadelphia Civil Rule 208.3(b)(3)(F)—a non-existent rule, presumably intending to cite Philadelphia Civil Rule 208.3(b)(2)(F)—as well as Pennsylvania Rule of Civil Procedure 208.4(b)(1). In the proposed order, Appellants indicated that their Preliminary Objections should be decided, following the issuance of a rule to show cause, pursuant to Pa.R.C.P. 206.7(c).

The trial court issued an order dated May 10, 2017, overruling the Preliminary Objections.[4] The court found that on the evidence proffered by Appellants, there was no enforceable arbitration agreement. In a footnote, the court explained:

---

[4] The court sustained the Preliminary Objection related to Le Vin's claim for attorneys' fees.

It appears that plaintiff and at least one of the defendants explored the possibility of submitting their dispute to a Beth Din in Philadelphia or, alternatively, to one based in New York. However, the letters proffered by defendants do not contain all the material terms of an agreement between all parties to resolve all the claims asserted in this action in any specific alternative forum.

Order, filed May 10, 2017, at n.1. The court did not issue a rule to show cause.

Appellants filed this timely appeal,[5] presenting the following issues for our review:

A. Did the trial court abuse its discretion and commit reversible error when it failed to issue a Rule to Show Cause with regard to Defendant's Preliminary Objections in the nature of a petition to compel arbitration as a matter of course where the Philadelphia County Court of Common Pleas has adopted a Local Civil Rule that requires a Rule to Show Cause to be issued as a matter of course, and where the Defendants were not provided with discovery or an evidentiary hearing at which the parties' disputed allegations could be resolved by ruling upon the parties' evidence?

B. Did the trial court abuse its discretion and commit reversible error when it overruled the Defendants' Preliminary Objections in the nature of a petition to compel arbitration based solely on disputed allegations in the pleadings and the attachments thereto, without granting discovery, holding an evidentiary hearing, or otherwise gathering sufficient evidence to facilitate appellate review of its decision?

C. Did the trial court commit reversible error when it denied the Defendants' Preliminary Objections in the nature of a petition to compel arbitration because its conclusion that the parties did not

_____

[5] Our jurisdiction over this appeal is proper. ***See*** 42 Pa.C.S.A. § 7320(a)(1) (providing that under the PUAA, an appeal may be taken as of right from "[a] court order denying an application to compel arbitration made under section 7304(b)"); 42 Pa.C.S.A. § 7342 (making Section 7320 of the PUAA applicable to common law arbitration); Pa.R.A.P. 311(a)(8) (providing that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties"); ***see also*** Pa.R.A.P. 311(g)(1)(iv).

reach an agreement to have their case heard by a Beth Din (*i.e.*, a court of Jewish law) was not supported by substantial evidence?

Appellant's brief at 5-6 (suggested answers omitted).

"We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence." ***Elwyn v. DeLuca***, 48 A.3d 457, 461 (Pa.Super. 2012) (citations omitted). "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement." ***Id.*** Whether an express agreement to arbitrate exists is a question of law over which our scope of review is plenary. ***See D & H Distrib. Co. v. Nat'l Union Fire Ins. Co.***, 817 A.2d 1164, 1166 (Pa.Super. 2003).

Appellants first argue that the trial court erred in failing to issue a rule to show cause. According to Appellants, a local rule in Philadelphia County mandates that the trial court issue a rule to show cause following the filing of a petition to compel arbitration. ***See*** Appellant's Brief at 25-26 (citing Pa.R.C.P. 206.4(a)(1), 206.6(a); Phila.Civ.R. 206.4(c), 206.1(a)(1)(iii); ***U.S. Spaces, Inc. v. Berkshire Hathaway Home Servs., Fox & Roach***, 165 A.3d 931, 934 (Pa.Super. 2017)). Appellants contend that had the trial court followed the proper procedure and issued a rule to show cause, Appellants would have conducted discovery thereafter, and would have produced evidence which would have allowed the court to find in Appellants' favor

regarding the existence of the agreement to arbitrate. Appellants argue that the court erred in considering whether the exhibits attached to its Preliminary Objections provided sufficient proof of the arbitration agreement, as Appellants were not obligated to provide *any* evidence in support of the allegations in their Preliminary Objections.[6]

In Philadelphia County, the local rules provide that petitions to compel arbitration are governed by the petition procedures set forth in Rules 206.1 through 206.7 of the Rules of Civil Procedure. **See** Phila.Civ.R. 206.1(a)(1)(iii). As we recently explained in **U.S. Spaces**, "Pa.R.C.P. 206.4 provides the Courts of Common Pleas two options in responding to the filing of a petition." **U.S. Spaces**, 165 A.3d at 933. By default, the court has discretion in whether to issue a rule to show cause. **Id.** (citing Pa.R.C.P.

---

[6] Appellants' exact arguments in support of the issuance of a rule to show cause were not presented to the trial court. Appellants' Praecipe to Issue a Rule to Show Cause cited rules that provide that when parties raise an issue of disputed fact during a preliminary objection, a trial court may elect to issue a rule to show cause, but may elect to develop the record using other methods as well. **See** Pa.R.C.P. 208.4(b)(1), note. On appeal, Appellants argue for the first time that Rules 206.4(a)(1) and 206.6(a) of the Rules of Civil Procedure and Rules 206.1(a)(1)(iii) and 206.4(c) of the Philadelphia Local Rules of Civil Procedure mandate the issuance of a rule to show cause upon a petition to compel arbitration. However, because Appellants raised the issue of the issuance of a rule to show cause before the trial court; a motion for post-trial relief may not be filed to orders disposing of preliminary objections (providing an appellant little opportunity to present an argument raising procedural error), **see** Pa.R.C.P. 227.1, note; **Thomas A. Robinson Family Ltd. P'ship v. Bioni**, 2017 PA Super 410 --- A.3d ---- (Pa. Super. Dec. 27, 2017); and Le Vin has not argued waiver of Appellant's first issue, we do not find it waived.

206.5). "The alternative, codified in Pa.R.C.P. 206.6, must be chosen by the adoption of a local rule and provides for the issuance of a rule to show cause 'as of course.'" **U.S. Spaces**, 165 A.3d at 933. Philadelphia has adopted Rule 206.6 through Philadelphia Local Rule of Civil Procedure 206.4(c).[7] **See** Phila.Civ.R. 206.4(c); **U.S. Spaces**, 165 A.3d at 933-34 (concluding that Philadelphia local rules mandate that a rule to show cause be issued "as of course" upon the filing of a petition to vacate an arbitration award).[8]

However, as Appellants acknowledge, a Philadelphia judge need not issue a rule to show cause *where the allegations in the petition do not provide*

---

[7] The rule states, in pertinent part:

> The Rule to Show cause process set forth in Pa.R.C.P. 206.6 is hereby adopted for all petitions filed pursuant to Pa.R.C.P. 206.1 et seq. Upon the filing of a petition, a rule to show cause shall be issued as of course by the Motion Court clerk on behalf of the Court.

Phila.Civ.R. 206.4(c).

[8] Philadelphia's local rule directing the issuance of a rule to show cause upon a petition to compel arbitration does not conflict with the procedure set forth in 73 Pa.C.S.A. § 7304(a), which provides that "If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied." This procedure is applicable both to arbitration agreements under the PUAA and under common law. **See** 73 Pa.C.S.A. § 7342. As we have previously noted, subsection 7304(a) "provides no guidance as to the procedure a trial court should employ in 'summarily' determining whether an agreement to arbitrate exits." **Schwarz v. Wells Fargo Advisors, LLC**, 58 A.3d 1270, 1273 n.1 (Pa.Super. 2012). It is therefore possible for the trial court to summarily decide the issue following the issuance of a rule to show cause and the parties' responses thereto.

*a legal basis for relief*. **See** Appellant's Brief at 26 (citing **U.S. Spaces**, 165 A.3d at 934). Functionally, a rule to show cause allows a respondent to raise conflicting facts and for the parties to conduct discovery prior to a court's consideration of those facts. **See generally** Pa.R.C.P. 206.7. But where the facts alleged by the petitioner in the first instance make out no legal claim, development of the factual record is unnecessary. **See id.**, Comment (stating that the purpose of Rule 206.7 "is to create a record from which the court may determine disputed issues of fact raised by the petition and answer," and that if the parties do not raise disputed issues of fact, "then the petition and answer are ready for decision by the court without the fact-finding process").

Here, through Preliminary Objections, Appellants petitioned the court to compel arbitration based on an alleged arbitration agreement. Their request was the functional equivalent to a request to compel specific performance of the agreement. **See Keystone Wire & Iron Works, Inc. v. Van Cor, Inc.,** 369 A.2d 758, 760 n.4 (Pa.Super. 1976). The trial court, therefore, was first faced with the threshold question of whether the facts alleged by Appellants supported the existence of an enforceable agreement.

In Pennsylvania, a written agreement to arbitrate "is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract." 42 Pa.C.S.A. §

7303.[9] As with any agreement, in order for an agreement to arbitrate to be enforceable, all parties must expressly assent to the same, sufficiently definite terms. **See Bair v. Manor Care of Elizabethtown, PA, LLC**, 108 A.3d 94, 97-98 (Pa. Super. 2015) (stating that in order to determine whether agreement to arbitrate exists, a court must examine "whether the parties agreed in a clear and unmistakable manner to arbitrate their disputes" and that "no offer will be found to exist where its essential terms are unclear" (citation omitted)). Assent will not be found by implication, and agreements to arbitrate are strictly construed. **See Elwyn**, 48 A.3d at 461.[10]

---

[9] As the agreement at issue is not a written agreement specifically invoking the PUAA, it is governed by common law. **See** 42 Pa.C.S.A. § 7302(a). Section 7303 of the PUAA, quoted above, is applicable to common law agreements to arbitrate. **See id.** at § 7342.

[10] As stated in **Elwyn**:

> Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

**Elwyn**, 48 A.3d at 461 (citations omitted); **see also J. S. Cornell & Son v. Rosenwald**, 13 A.2d 716, 719 (Pa. 1940) ("The terms of the agreement are not to be strained to discover it. They must be clear and unmistakable to oust the jurisdiction of the courts, for trial by jury cannot be taken away by implication, merely, in any case").

An alleged agreement to arbitrate may therefore be found unenforceable where "it lacked essential terms such as the names of the contracting parties, the date of the agreement," and a description of the arbitration process. **See Bair**, 108 A.3d at 97-98.

> No technical or formal words are necessary to constitute a reference of a controversy to arbitration, but it must clearly appear that the intention of the parties was to submit their differences to a tribunal and to be bound by the decision reached by that body on deliberation. It is said that every reasonable intendment will be made in favor of agreements to arbitrate, and this is the applicable principle where agreements are found to call for the arbitration of disputes. But as an arbitration agreement bars recourse to the courts where the arbitrators are named in advance at common law, and even if not named in advance, under the Act of 1927, the assent to relinquish a trial by jury is not to be found by mere implication. Thus it was that the Supreme Court in **Weichardt v. Hook**, 83 Pa. 434, decided that an agreement between two parties that their attorneys should 'adjust and settle' their differences was not a definite submission to arbitration.

**Scholler Bros. v. Otto A. C. Hagen Corp.**, 44 A.2d 321, 322 (Pa.Super. 1945) (some citations omitted). When the parties are in disagreement over, or have not discussed, the material terms of an agreement, any manifestations of assent to the agreement are premature, and do not create a binding contract. **See Quiles v. Fin. Exch. Co.**, 879 A.2d 281, 285 (Pa.Super. 2005) ("So long as any condition is not acceded to by both parties to the contract, the dealings are mere negotiations and may be terminated at any time by either party while they are pending" (citation omitted)).

Here, the trial court explained in its Rule 1925(a) Opinion that it had concluded that no valid agreement to arbitrate existed because the facts proffered by Appellants were "not persuasive that there was an actual meeting

- 13 -

of the minds between the named parties in this case, particularly when the agreement terms are not defined. . . . Proof of a complete agreement is lacking as the exhibits show a negotiating process with misunderstandings and no definite agreement terms." Trial Ct. Op. at 3-4. The court pointed out that while Marcus purportedly represents Le Vin before the Beth Din, he has not entered his appearance representing Le Vin in the Court of Common Pleas, and that the evidence provided by Appellants consists mainly of communications between Marcus and Rabbi Brisman, and include no other parties. *Id.* at 3.

We agree with the trial court that Appellants' Preliminary Objections do not support a conclusion that a binding agreement to arbitrate was formed between the parties. As stated above, in their Preliminary Objections, Appellants mainly summarized the correspondence Appellants attached as exhibits. The letters are primarily between Rabbi Brisman of the Beth Din and Marcus, who represents Le Vin before that body. The letters reflect that Ruvane Ribiat initiated contact with the Beth Din, which then contacted Le Vin; Le Vin (through Marcus) requested that the Beth Din set a date for a *din torah*. A date was set, but it was unclear whether there would be time for all witnesses (including expert witnesses) to be heard, and indications that Rabbi Brisman might decline to decide the case after hearing the witness testimony. Le Vin disagreed with such a proceeding, and stated that it would be contacting a different *beth din*, while having "no intention of failing to appear for a *din torah*." Rabbi Brisman acknowledged there had been a

misunderstanding regarding the procedure to be held by the Beth Din and that he and Marcus "had different impressions of what to expect." Appellants made no specific factual allegations aside from the contents of those six letters. Appellants do not allege that other writings exist which would constitute a contract, or that a separate or supplementary oral agreement took place.

We fail to see how this set of facts, taken as true, could establish a meeting of the minds and a binding agreement to arbitrate between the parties. The letters do not discuss any material terms or demonstrate an express offer and a timely, unconditional acceptance. Although Marcus requests that the Beth Din set a date for a *din torah*, and states that Le Vin ultimately intends to appear before a *beth din*, these unilateral statements do not constitute an express manifestation of assent sufficient to require that the case be submitted to arbitration. While Appellants stated in their Preliminary Objections that they "have agreed" to submit to arbitration before the Beth Din, **see** Preliminary Objections at ¶ 12, they make no mention of how or when their agreement was communicated to Le Vin, or the terms of the agreement. Appellants' assertion that an enforceable agreement existed was a conclusion of law to which the trial court was not bound, and one which Appellants failed to support with adequate factual allegations.

Appellants place much emphasis on the letters issued by the Beth Din stating that the "case[] has been presented" to the Beth Din "with agreement of both parties," and argue that the trial court did not sufficiently consider their import. These documents, however, are no substitute for factual

allegations substantiating the existence of an agreement. Rabbi Brisman's letters to the Court of Common Pleas merely echo the same legal conclusion Appellants have embraced, without providing substantiation of Rabbi Brisman's belief through allegations that any party made any particular oral statement or signed any particular document expressly submitting to the authority of the Beth Din.

In their second issue, Appellants claim that the trial court was obligated to develop the record before deciding whether an enforceable arbitration agreement existed pursuant to Rule 1028(c)(2). Appellants also analogize their case to **Keystone Tech. Grp., Inc. v. Kerr Grp., Inc.**, 824 A.2d 1223 (Pa.Super. 2003), in which we vacated an order denying a petition to compel arbitration where the trial court did not conduct an evidentiary hearing on whether the agreement to arbitrate was void. **See** Appellant's Brief at 39-40.

We are unpersuaded that the court was obligated to order discovery under Rule 1028(c)(2), or that **Keystone** contradicts our disposition of this case. Rule 1028(c)(2) states that if a party's preliminary objections raise an issue of fact, "the court shall consider evidence by depositions or otherwise." **See** Pa.R.C.P. 1028(c)(2). The rule does not mandate that a trial court order discovery between the parties when the preliminary objections do not raise an issue of fact, and, for the reasons stated above, Appellants' Preliminary Objections do not. In **Keystone**, we concluded that the trial court lacked substantial evidence to support its factual findings, and remanded the case for further proceedings. 824 A.2d at 1227-28. Here, in contrast, as we have

explained above, the trial court made no factual determinations. Rather, the trial court considered the factual allegations made by Appellants in support of the agreement, and determined that those allegations did not constitute an enforceable arbitration agreement.

In their third and final issue, Appellants claim that the evidence of record contradicted the finding of the trial court that no arbitration agreement existed. As discussed above, Appellants' argument is misplaced; the trial court concluded that even taking Appellants' factual allegations as true, those allegations could not, as a matter of law, support a conclusion that an enforceable agreement existed.

Under this issue, Appellants also argue that the parties' failure to identify an arbitrator or a particular *beth din* or agree on all details regarding the arbitration does not render their agreement unenforceable. Appellants cite 42 Pa.C.S.A. § 7305, which allows a trial court to appoint an arbitrator "in the absence of a prescribed method or if the prescribed method fails," and cases stating that procedural questions arising during arbitration are within the province of the arbitrator. **See, e.g.**, **Kardon v. Portare**, 353 A.2d 368, 370 (Pa. 1976). This, however, is not a situation where an express agreement to arbitrate fails to cover every ancillary detail, but rather it is a case in which no express agreement to arbitrate, providing even minimal terms, existed at the outset.

Moreover, a court will not appoint an arbitrator when the choice of arbitrator was an integral part of the agreement to arbitrate. **See Stewart v.**

***GGNSC-Canonsburg, L.P.***, 9 A.3d 215, 221 (Pa.Super. 2010). Here, it is impossible, simply by reading Marcus's request that Rabbi Brisman set a date for a *din torah*, to determine to what extent the identity or identities of the rabbi or rabbis were contemplated by the parties, or the importance of the parties' choice of *beth din*. What is clear, though, is that the parties were contemplating arbitration according to particular religious tenets. It would therefore have been inappropriate for the trial court, without adequate guidance by an agreement to clear and definite terms, to have selected an arbitrator or forum in the parties' stead.[11]

Seeing no basis on which to grant Appellants relief, we affirm the order of the trial court denying Appellants' request to compel arbitration.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/18

---

[11] Our decision here should not be construed to suggest that an agreement to submit to arbitration before a *beth din* could not, in an appropriate case, be binding and enforceable.