ELWYN, Appellee

v.

**James J. DeLUCA, Appellant.**

Superior Court of Pennsylvania.

Argued March 27, 2012.

Filed July 2, 2012.

---

Frederick J. Gerngross, Philadelphia, for appellant.

Robert A. Graci, Harrisburg, for appellee.

BEFORE: ALLEN, OLSON and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

Appellant, James J. DeLuca, appeals from the order entered in the Delaware County Court of Common Pleas overruling his preliminary objection to the complaint of Appellee, Elwyn. We are presented with the question: When an organization executes a contract with a second organization that is owned or led by one of its board members, and the first organization subsequently brings a breach of fiduciary duty suit against the board member relating to his duties as a board member and a separate breach of contract suit against the second organization, is the breach of fiduciary duty claim bound by a mandatory arbitration clause in the contract between the first and second organizations? We hold that it is not. Thus, we affirm the court's order.

Appellee is a non-profit human services organization and is managed by a board of directors. Appellee's Compl., 2/11/11, at ¶¶ 4–5. Appellant was a member of the board;[1] he is also the co-owner, president, and CEO of J.J. DeLuca Company, Inc. ("JJDC"), a construction corporation. Appellee engaged JJDC to construct a residential building. On July 27, 2009,[2] Appellee, as "Owner," and JJDC, as "Construction Manager," executed a contract, which was "an industry standard American Institute of Architects (AIA) form document modified by [the parties] for the Project, and consist[ed] of two principal parts: a Standard Form of Agreement between Owner and Construction Manager ... and the General Conditions of the Contract for Construction" (collectively, the "Contract"). Appellant's Brief at 5. The trial court summarized:

> Under the terms of the Contract, JJDC was to make the appropriate proportional payments to subcontractors for their completed work once payment was received from [Appellee. Appellee] claim[ed] that, although contracts were entered between JJDC and subcontractors for the building project and [Appellee] paid the invoices received from JJDC for the subcontractor's work, JJDC failed to pay the subcontractors, thereby breaching the Contract with [Appellee].

Trial Ct. Op., 8/31/11, at 1–2.

On February 11, 2011, Appellee filed a complaint against Appellant, claiming

---

* Former Justice specially assigned to the Superior Court.

1. The record does not readily indicate whether Appellant remains a member of Appellee's board of directors.

2. While the complaint states that Appellee and JJDC entered into the contract on July 10, 2009, Appellee's Compl. at ¶ 12, the signatures on the contract are dated July 27, 2009. AIA Document A121 CMC–2003 and AGC Document 565, at 18, Appellant's Compl., 2/11/11, Ex. A.

breach of fiduciary duty and, in the alternative, seeking common law indemnity. On the same day, Appellee also initiated a suit against JJDC, claiming breach of contract, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and indemnification.[3] In the instant matter, Appellee's complaint asserted that Appellant, as a board member of Appellee, lobbied his fellow board members to select his company, JJDC, for the building project, and

> willfully influenced the Board to award the contract to his company without disclosing all material facts and intentionally withholding facts, by acting in his overall self interest and not disclosing the extent of his profits from the building project, by failing to advise [Appellee] that the subcontractors were not being paid when it was within his knowledge, by misapplying funds received from [Appellee] in his capacity as President and CEO of JJDC, and by accepting payments on behalf of JJDC to which it was not entitled.

*Id.* at 2. Appellee's alternative claim for common law indemnity

> alleg[ed] that [Appellant] is primarily responsible for funds due to subcontractors for which the subcontractors have sought payment from [Appellee. Appellee] requested that the Court indemnify [it] from the costs owed to subcontractors to whom JJDC never made payment.

*Id.*

On March 25, 2011, Appellant filed preliminary objections, arguing, *inter alia,* "that the claims set forth in [Appellee's] Complaint were subject to an agreement for alternative dispute resolution which mandated mediation and binding arbitration of all disputes between the parties." *Id.* at 2. On June 3rd, the court overruled the preliminary objections and directed Appellant to file an answer to Appellee's complaint. Appellant instead took this timely appeal, presenting three issues for our review, which we address together.[4]

Appellant first avers that the Contract between Appellee and JJDC includes an enforceable agreement to arbitrate, and that he "is only seeking to hold [Appellee] to the contractual terms to which it has bound itself." Appellant's Brief at 15. Appellant contends that although he was not a signatory to the contract, he has standing to enforce the agreement in this suit. He cites to *Dodds v. Pulte Home Corp.,* 909 A.2d 348 (Pa.Super.2006), in arguing Appellee's claim against him "is closely intertwined with the contractual claims, stems from the same facts and implicates the same legal [principles and thus] also subject to arbitration." Appellant's Brief at 12–13. Appellant also asserts that while the trial court concluded Appellee's breach of fiduciary claim

---

3. In the suit against JJDC, the trial court also found, although on different grounds, that the parties were not bound by the Contract's mandatory arbitration provision. JJDC's appeal from that ruling is currently pending at *Elwyn v. J.J. DeLuca Co., Inc.,* 2222 EDA 2011 (unpublished memorandum).

4. "As a general rule, an order denying a party's preliminary objections is interlocutory and, thus, not appealable as of right. There exists, however, a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration." *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635, 636 (Pa.Super.1998) (citations omitted). *See also* 42 Pa. C.S. § 7320(a)(1) (stating appeal may be taken from court order denying application to compel arbitration); Pa.R.A.P. 311(a)(8) (stating appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from order "which is made appealable by statute or general rule.").

against him was separate from its breach of contract claim against JJDC, the court failed to look beyond "the labels applied to the claims" in Appellee's complaint and address the inclusion of the breach of contract claims. *Id.* at 13–14. Instead, Appellant reasons, the gist of Appellee's actions against him "arise from the Contract and are inextricably entwined with its claims against" JJDC. *Id.* at 16. Appellant emphasizes that the primary factual basis in Appellee's complaint is "the allegations of (i) a failure to make required payments to subcontractors ... and (ii) the seeking of the receipt of payments not authorized by the Contract." *Id.* We find no relief is due.

 We note the relevant standard of review:

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

*Smay v. E.R. Stuebner, Inc.,* 864 A.2d 1266, 1270 (Pa.Super.2004) (citations omitted).

> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts gen-

erally." "These are questions of law and our review is plenary."

*Id.* at 1272–73 (citations omitted).

> Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

*Cumberland–Perry Area Vocational–Technical School v. Bogar & Bink,* 261 Pa.Super. 350, 396 A.2d 433, 434–35 (1978) (citations omitted).

> In general, only parties to an arbitration agreement are subject to arbitration. However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent.

*Smay,* 864 A.2d at 1271 (citation omitted).

 We first determine "whether a valid agreement to arbitrate exists." *See id.* at 1270. As stated above, the Contract was between and executed by Appellee, as "Owner" and JJDC, as "Construction Manager." [5] Appellant's Compl., Exh. A., Contract, 7/27/09. *Id.* The Standard Form of Agreement provided in pertinent part:

> § **9.1.1** During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201–1997 except that, during the Preconstruction Phase, no decision by the Architect shall be a

---

**5.** The Contract has the heading, "AIA Document A121 ™ CMC–2003 and AGC Document 565, Standard Form of Agreement Between Owner and Construction Manager where the Construction Manager Is Also the Constructor." Appellant's Compl., Exh. A. at 1.

condition precedent to mediation or arbitration.

AIA Document A121 CMC–2003 and AGC Document 565, at 16. We glean that "Sections 4.3 through 4.6 of A201–1997" are the General Conditions of the Contract for Construction.[6] That contract provides in pertinent part:

### § 4.3 CLAIMS AND DISPUTES

§ 4.3.1 Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the claim.

\* \* \*

### § 4.5 MEDIATION

§ 4.5.1 The parties agree first to try to resolve such dispute. Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

\* \* \*

### § 4.6 ARBITRATION

§ 4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except

those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, may, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties may endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

§ 4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

AIA Document A201–2007, at 22–24, Appellant's Prelim. Objections, 3/25/11, Exh. B.

The trial court reasoned as follows. *See* Trial Ct. Op. at 4–5. The Contract was between only Appellee, as Owner, and JJDC, the Construction Manager. Appellant, the defendant in the instant suit, was simply not a party to the Contract.

Pursuant to 4.3.1 of the Contract, a "Claim" is defined as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of the Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question **between the Owner and Contractor** arising out of related to the Contract (emphasis added). Because [Appellant] is not a party to the Contract, no valid arbitration agreement ex-

---

**6.** While the Standard Form of Agreement refers to "A201–1997," the General Conditions of the Contract for Construction is entitled "A201–2007."

ists between the parties and [Appellant] does not have a right to compel arbitration pursuant to the Contract.

Trial Ct. Op. at 5.

We agree with this analysis. We further agree with the trial court's reasoning that the instant matter is distinguishable from *Dodds,* 909 A.2d 348. In *Dodds,* this Court noted that the arbitration clause between the homebuyer and builder was broad; it stated, "Any controversy, claim, or dispute arising out of or relating to this agreement or purchase of the Home ... shall be settled by arbitration." *Id.* at 350 (emphasis removed). The homebuyers filed suit against the builder, arguing "the homes were not built well and proper repairs were not made." *Id.* The plaintiffs also raised claims against the builder's parent company, claiming it "made fraudulent representations about the quality of the homes that were to be built" and "that they exceed normal customer satisfaction." *Id.* at 349.

On appeal, the issue was whether the plaintiffs' addition of fraud charges against the defendant's parent company "[took] the matter out of the ambit of" a mandatory arbitration clause between the plaintiffs and defendant. *Id.* This Court held that the plaintiffs' fraud claims against the parent company "relate[d] to the purchase itself[ and] not merely to the contract," and thus it was "covered by the contract language in this case," including the mandatory arbitration clause. *Id.* at 350–51. This Court noted "that non-signatories to a contract, such as third-party beneficiaries, may fall within the scope of an arbitration clause if that is the signing parties' intent." *Id.* at 351. We held "that non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-sig-

natories and the contract or the contracting parties." *Id.*

The *Dodds* arbitration provision did not restrict the definition of a "claim" to one arising between the parties to the contract, nor to one arising from or related to the contract. *See id.* at 350. Instead, the *Dodds* arbitration provision also included any controversy, claim or dispute relating to the purchase of the home. *Id.* In the instant matter, the Contract specifically defined a "Claim" as one related to the terms of the Contract and "between the Owner and Contractor." AIA Document A201–2007, at 22.

Furthermore, Appellee's claims against Appellant are not inextricably entwined with the Contract. Appellee's breach of fiduciary claim against Appellant began with the fact that Appellant managed all of JJDC's daily affairs and business decisions and was privy to all of JJDC's financial information. Appellee's Compl. at ¶¶ 8–9. Appellee also noted that that at least four subcontractors and suppliers have filed mechanic's liens, totaling $436,892, against its property. *Id.* at ¶ 22. The basis of Appellee's claim, however, related to Appellant's actions as a board member: while Appellant "attended board meetings during and throughout the time in which [JJDC] was performing its work on the Project," he allegedly "never informed" Appellee that JJDC had solvency issues, that it was not paying its subcontractors or suppliers, and that it "intended to misappropriate sums received from" Appellee. *Id.* at ¶¶ 24–27. Appellee asserted that Appellant's intentional failure to inform was a breach of his duty to act without self-interest and to disclose material facts he knew were harmful to Appellee's interests. *Id.* at ¶¶ 30–31, 35. We agree with the trial court that the instant suit concerns Appellant's duties to Appellee as a Board member, and not Appellant's in-

volvement with JJDC's obligations under the Contract.

For the foregoing reasons, we agree with the trial court that Appellant cannot invoke the arbitration provision in a contract between Appellee and JJDC. *See Smay*, 864 A.2d at 1271. Because we hold that there was no arbitration agreement between the parties, we need not consider whether the dispute is within the scope of the agreement. *See id.* at 1270.

Order affirmed.