J-A28025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SAMUEL FAIBISH AND YEHUDA OLEWSKI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| THE LINCOLN ON LOCUST, L.P. AND ADAR, LLC | |
| Appellee | No. 840 EDA 2014 |

Appeal from the Order Entered on February 10, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: 140100306

BEFORE:  GANTMAN, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                **FILED FEBRUARY 13, 2015**

Samuel Faibish and Yehuda Olewski appeal from the order entered February 10, 2014 denying their petition to compel arbitration and the enforcement of existing Bet Din[1] orders.  We affirm.

The history of this case involves extensive, overlapping, and often contradictory litigation filled with the parties' unremitting flurry of filings in the Philadelphia Court of Common Pleas, the United States District Court for the Eastern District, and a Bet Din (rabbinical court) selected by the parties.  We begin with a chronological recitation of the relevant facts and procedural history.

---

[1]    A Bet Din rabbinical court is "[r]eligious arbitration used by Orthodox Jewish communities."  Trial Court Opinion ("T.C.O."), 5/21/2014, at 1 n.1 (citation omitted).

Jacob Unger is the majority partner in Lincoln on Locust, LP ("LOL"), a partnership formed to purchase and manage the property at 1222-26 Locust Street in Philadelphia ("the Property"). Faibish and Olewski are limited partners in LOL. On November 7, 2005, LOL bought the Property for $7,000,000.

In 2006, the Property was damaged by a fire, which "destroyed some of the interior walls, which are now supported by shoring[.]" Trial Court Opinion ("T.C.O."), 5/21/2014, at 9. The Property remained unrepaired and in a dangerous condition; the City of Philadelphia apparently has filed paperwork to demolish the property, pending the outcome of litigation. *Id.*

The Property was subsequently mortgaged on July 28, 2011 for $3,600,000 by LOL and ADAR, LLC ("ADAR")[2] to East Mark International, Ltd. ("East Mark"), which is solely owned by Gershon Engel. On September 5, 2011, Faibish, Olewski, LOL, and ADAR entered into an Agreement to Submit to Arbitration "all disputes between the parties including but not limited to Lincoln & Locust LP [*sic*] [and] ADAR LLP." Agreement, 9/5/2011. Thereafter, Faibish and Olewski initiated Bet Din proceedings, and a panel of three rabbis convened to undertake review of the case.

On July 30, 2012, the Bet Din rabbinical court issued an "Interim Rabbinical Ruling" holding that Unger and Engel "shall not alter any

---

[2] ADAR, LLC is solely owned by Jacob Unger.

ownership of the asset or a portion thereof, or transfer any portion of the shares to any third entity, and not to collateralize the asset . . . beyond any existing mortgages of the asset, as well as not to take any action to commence renovations or construction [*sic*] at the asset, until they obtain written authorization by the Rabbinical Court or from the party of the plaintiffs." This ruling was filed with the Recorder of Deeds of Philadelphia County.

On January 30, 2013, apparently unbeknownst to Faibish and Olewski, LOL entered into an agreement of sale with an arms-length buyer, Pelican Properties, LLC, for $2,220,000, subject to the removal of the *lis pendens* caused by the July 30, 2012 interim rabbinical ruling. On March 3, 2013, East Mark filed a complaint for confession of judgment against ADAR and LOL in the United States District Court for the Eastern District, asserting that LOL had defaulted on the mortgage. The next day, the clerk of court entered judgment in favor of East Mark for $3,780,000, and East Mark filed a praecipe for writ of execution on March 18, 2013. The clerk issued the writ, and the United States Marshal scheduled the Property for sale on June 24, 2013. On June 6, 2013, Rabbi Moshe Shlomo Gobioff, on behalf of the Bet Din, sent a letter to Unger, stating that his scheduled sale of the Property would be "against the injunction that was issued by the empanelled Rabbinical Court" and "advise[d] [Unger] to halt to [*sic*] sale proceedings until we will convene to deliberate the matter and your case will see the light of resolution."

- 3 -

On June 20, 2013, at docket no. 13-1204, Faibish and Olewski filed for a temporary restraining order and preliminary injunction in the United States District Court for the Eastern District of Pennsylvania to intervene and prevent the scheduled sale of the Property on June 24, 2013. In that filing, they stated that the Property had been destroyed in a fire after its purchase and had never been developed, and alleged that Unger was fraudulently affiliated with East Mark. The district court permitted Faibish and Olewski to intervene and granted the temporary restraining order through July 17, 2013.

On August 13, 2013, the parties entered into a stipulation before the eastern district court at no. 13-1204 in which they "agreed that the dispute between [them] relating to the property located at and known as 1222-1226 Locust Street . . . shall be resolved through an agreed[-]upon Rabbinical Court." Further, "East Mark shall not take any further action on the judgment by confession obtained in this case on or about March 6, 2013, except as specifically permitted or required by the Bet Din proceeding." Stipulation, 8/13/2013, at 2 ¶¶ 4-5.

On September 17, 2013, East Mark filed an emergency petition in the Philadelphia County Court of Common Pleas, arguing that the July 30, 2012 Bet Din rabbinical court's "Interim Rabbinical Ruling" was a *lis pendens* on the property and a cloud on the title. The court agreed, and on September 24, 2013, struck the "Interim Rabbinical Ruling."

The next day, on September 25, 2013, LOL entered into an escrow agreement with ADAR and Twelve22 LP, a subsidiary of Pelican Properties, to retain in escrow a release of mortgage, a $100,000 indemnity fund, and a deed of correction on the Property. LOL and Pelican closed their earlier agreement of sale on the same day, and a deed was recorded in the name of Twelve22 LP.

On October 17, 2013, Faibish and Olewski filed a motion "to enforce stipulated order and for mandatory injunctive relief" in the district court, arguing that the sale to Pelican Properties was not authorized by the Bet Din rabbinical court.

On October 21, 2013, the Bet Din rabbinical court issued a ruling determining that Faibish and Olewski's partnership interest in Lincoln on Locust LP was 42.5%, and stating that the asset could not be sold without Faibish and his partners' consent and participation in negotiations. The ruling further stated: "As to calculations between the parties, the Rabbinical Court will consider and rule in the future." Bet Din Ruling, 10/21/2013, at ¶ 4.

After two days of hearings, on October 28, 2013, the Honorable Harvey Bartle of the United States District Court ruled upon Faibish and Olewski's emergency petition for a temporary restraining order at No. 13-1204. Judge Bartle concluded that "[LOL] clearly violated the September 5, 2011 Agreement to Arbitrate and the July 30, 2012 Interim Rabbinical Ruling when it entered into an Agreement of Sale with Pelican Properties, LLC and

then sold the property to its related entity, Twelve22, LP." District Court Memorandum ("D.C.M."), 10/28/2013, at 9-10. However, the court determined that Faibish and Olewski had failed to establish that the $3.6 million East Mark mortgage was fraudulent and that the entire $2.22 million purchase price therefore would go to East Mark to extinguish the mortgage, leaving no proceeds for LOL. Thus, the district court concluded that "Faibish and Olewski have established no evidence of a recognized harm from any failure to become the purchasers of the property at 1222-1226 Locust Street." *Id.* at 12. The court ordered LOL to pay fines and Faibish and Olewski's costs for its "flagrant violation" of the stipulated order, but did not disturb the sale of the property. *Id.*

One week later, on October 29, 2013, the rabbinical court also determined that LOL, ADAR, Unger, and Engel violated the July 30, 2012 order when they sold the property to Twelve22. The rabbinical court ordered that "any proceeds related to that transfer under their control[] shall not be disposed of[] or transferred to anyone including but not limited to East Mark International, [Ltd.] or any of its officers, without the direct written directive of our panel." "Restraining Order," 10/29/2013, at 1. The Bet Din rabbinical court further ordered that the proceeds be escrowed pending their distribution by the Bet Din.

Undeterred by these consonant rulings, Faibish, Olewski, Kalman Farkis, and I.M. Rottenberg[3] filed a second complaint against LOL and ADAR to enjoin the sale of the property in the district court at no. 13-6376. On November 5, 2013, the district court dismissed the complaint due to lack of subject matter jurisdiction based on diversity of citizenship under 28 U.S.C.A. § 1332(a).

At docket no. 189 of 2013, on November 7, 2013, after oral argument, the court of common pleas denied a petition by Faibish, Olewski, Kalman Farkis, and I.M. Rottenberg for injunctive relief, holding that they had not "shown that they will suffer irreparable harm if the petition is not granted [and they] have an adequate remedy at law in damages." Order, 11/7/2013. Thereafter, the court denied their motion for reconsideration on December 13, 2013. In an accompanying opinion, the court observed that not all of the parties in the litigation were parties to the arbitration agreement, and that if money damages are due, "[t]here is no indication that judgment could not be collected from [Appellees] domestically . . . ." Opinion, 12/13/2013, at 3. This order was not appealed.

On January 6, 2014, Faibish and Olewski filed the instant, second Petition to Compel Arbitration and Enforcement of Existing Bet Din Orders in

_____

[3]    Kalman Farkis, and I.M. Rottenberg are identified by the trial court only as "two other individuals who are not parties to the instant case." T.C.O. at 5 n.6.

the court of common pleas at Docket No. 840 of 2014, contending that they, LOL, and ADAR "are subject to a valid arbitration agreement," and that LOL and ADAR "have violated the Bet Din orders by entering into the Pelican Sale Agreement." Petition to Compel Arbitration, 1/06/2014, at 1, 3.

On February 10, 2014, the court of common pleas denied Faibish and Olewski's motion to stay the sale of 1222-26 Locust Street and compel the parties to return to arbitration, finding that the parties were bound by the prior court proceedings in state and federal court under the principles of *res judicata*.[4] On February 20, 2014, Faibish and Olewski filed a motion for reconsideration and requested an evidentiary hearing. On March 12, 2014, Faibish and Olewski timely filed an appeal to the Superior Court. On March 14, 2014, the trial court dismissed the motion for reconsideration as moot, but did not order Faibish and Olewski to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court entered a Pa.R.A.P. 1925(a) opinion on May 21, 2014.[5]

---

[4] The same day, the trial court denied Faibish and Olewski's petition to intervene in the mortgage foreclosure action involving East Mark and LOL. **See** Order No. 131100251. However, although the orders were discussed in a single trial court opinion, they were entered in two separate cases. Appellants' instant appeal lies only from the denial of the petition to stay the sale and compel the parties to return to Bet Din arbitration at Order No. 140100306.

[5] On April 1, 2014, during the pendency of the instant appeal, the Locust Street property apparently was sold to a third party. Appellants filed another complaint at docket no. 4041 of 2014 in the court of common pleas. The court granted ADAR and LOL's preliminary objections and dismissed
*(Footnote Continued Next Page)*

Faibish and Olewski present two questions for our review:

> a.    Did the [trial] court err when it denied Faibish and Olewski's Petition to Compel Arbitration and Enforcement of Bet Din Orders, as the parties had a valid arbitration agreement and the dispute was within the scope of the arbitration agreement?
>
> b.    Should Faibish, Olewski, LOL, and ADAR be compelled to arbitrate pursuant to their Arbitration Agreement?

Faibish and Olewski's Brief at 4.

Both of Faibish and Olewski's issues challenge the denial of their motion to compel arbitration. Although the trial court determined that their claims were barred by *res judicata*, Faibish and Olewski contend that, "[w]hile there have been several related matters to the instant appeal, no Court has ruled upon the parties' right to arbitrate pursuant to their valid Agreement to Arbitrate." *Id.* at 13. We conclude that no relief is due.

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

Appellants' complaint with prejudice on June 24, 2014, stating that "[Appellants], Jacob Ungar, ADAR, LLC d/b/a The Lincoln on Locust, [LP,] ADAR LLC and Lincoln, and Andre Engel are parties to an agreement signed on September 5, 2011 to Arbitrate before a Bet Din Rabbinical Court 'all disputes between the parties including but not limited to Lincoln on Locust LP and ADAR, LLP.'" Order, 6/24/2014. Appellants filed exceptions to the sale, and the Office of the Sheriff of Philadelphia County currently holds the proceeds of the sale.

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary.

Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

In general, only parties to an arbitration agreement are subject to arbitration. However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent.

*Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012) (citations and internal quotation marks omitted).

Faibish and Olewski state:

The fundamental dispute between the parties to the Arbitration Agreement is the ownership of LOL. The Bet Din Arbitration determined by way of the Bet Din LOL Ownership Finding that Faibish and Olewski held a 42.5% interest in LOL. Still to be determined by the Bet Din Arbitration [is] the **disposition of LOL's assets**.

Faibish and Olewski's Brief at 8 (emphasis added). Here, it is undisputed that the Property was the only asset of LOL; having been sold, its proceeds are now LOL's only possible asset. *See* T.C.O. at 2. Thus, by their own admission, Faibish and Olewski seek to compel LOL and ADAR to return to arbitration specifically for the purpose of distributing the proceeds from the closed and recorded sale of the Property owned by LOL. However, it is clear

that the relief sought by Faibish and Olewski cannot be accomplished by any further arbitration.

We conclude that the trial court did not abuse its discretion in denying the petition based upon *res judicata*.

> The doctrine of *res judicata* holds that a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action. . . . Where parties have been afforded an opportunity to litigate a claim before a court of competent jurisdiction, and where the court has finally decided the controversy, the interests of the state and of the parties require that the validity of the claim and any issue actually litigated in the action not be litigated again.
>
> *        *        *
>
> Application of the doctrine of *res judicata* requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties.

*Holz v. Holz*, 850 A.2d 751, 757 (Pa. Super. 2004) (citation omitted); *id.* at 758 (applying determination that "[f]oreign judgments are entitled to full faith and credit so long as the foreign court had jurisdiction and the defendant had the opportunity to appear and defend" to *res judicata* between federal and state courts).  Moreover, it is well-settled that:

> The [doctrine of *res judicata*] should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties.  The thing [that] the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which **the present parties actually had an opportunity to appear and assert their rights**.  If this be the fact, then the matter ought not to be

- 11 -

litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rul[ing].

***Buyfigure.com, Inc. v. Autotrader.com, Inc.***, 76 A.3d 554, 561 (Pa. Super. 2013) (citations and internal quotation marks omitted; emphasis in original).

Here, Faibish and Olewski intervened in the district court action for confession of judgment by East Mark, the mortgagor, against LOL and ADAR. There, the parties sought a judgment for the mortgage upon which LOL had defaulted. Faibish and Olewski were permitted to intervene upon the grounds that the mortgage "was a fraud intended to deprive them of their ownership interest in the property." D.C.M. at 2. Thus, the district court proceeding possessed the same common elements as the current proceeding: the thing sued upon (LOL's assets), the same cause of action (compulsion of arbitration before the Bet Din), identity of the parties, and, because Faibish and Olewski were permitted to intervene and participate in the underlying hearings, the capacity of the parties. ***See Holz***, 850 A.2d at 757. Accordingly, this Court and the trial court properly are bound by the doctrine of *res judicata* not to permit Faibish and Olewski to relitigate a claim already decided by the district court.

After determining that the East Mark mortgage on the property was a valid first mortgage on the property, and that LOL and ADAR had submitted their disputes with Faibish and Olewski to a Bet Din, the district court

concluded that LOL indeed had violated the Bet Din orders by selling the property after the Bet Din had told them not to do so.

Nonetheless, the district court determined as follows:

> We next turn to the issue of harm to the intervenors, Faibish and Olewski and their partners, who claim they have a 42.5% ownership interest in [LOL].[5] Even if they are correct as to their ownership interest, they will suffer no harm in this respect from the sale of the [P]roperty. As part of the August 13, 2013 Stipulated Order, Faibish and Olewski withdrew their Petition to Strike/Open Confession of Judgment in which they claimed that East Mark's underlying mortgage was a fraud. Thus, the intervenors are no longer challenging the validity of East Mark's mortgage here. That mortgage, as noted above, is in the amount of $3,600,000, far greater than the price of $2,220,000 Twelve22 LP is paying for the property. Consequently, East Mark will receive all the proceeds of any sale and nothing will remain to be paid to LOL or its partners, no matter what their ownership interest.
>
> ___
>
> [5] We note that under the LOL partnership agreement, the sale of any property requires the approval of 51% of the ownership interests. Faibish and Olewski, as limited partners with a 42.5% stake, cannot prevent the sale based on the terms of the partnership agreement.

D.C.M. at 11. Thus, the district court concluded that, given Faibish and Olewski's 42.5% stake in LOL as determined by the Bet Din, Faibish and Olewski had no power to prevent the sale of LOL's sole asset. In light of East Mark's valid mortgage on the property, LOL has no assets.

Any further discussion by this Court would be ineffective and violate our prohibition upon entering advisory opinions.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or

due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) (*en banc*) (internal citations and quotations omitted).

Here, the record supports the trial court's conclusion that no purpose would be served by compelling the parties to return to the Bet Din to arbitrate "the disposition of LOL's assets." Faibish and Olewski's Brief at 8. Faibish and Olewski repeatedly have asserted their rights before courts of competent jurisdiction. Repeatedly, they have failed to establish any right to recovery. The parties have taken so many bites from this apple that only the bitter core remains. By now, their continued efforts to establish that which has been rejected can only be vexatious and burdensome upon the courts, the Bet Din, and their counterparties, something Faibish and Olewski surely recognize regardless of their intentions in drawing out this dispute.

It is clear to us that the trial court did not abuse its discretion or err as a matter of law in declining to grant Faibish and Olewski's petition to compel arbitration where such an action would only be an attempt to nullify prior determinations against their favor and to recover assets that quite simply no longer exist in any sense that is useful to Faibish and Olewski.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/13/2015