J. A12045/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARYANNE GALLAGHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| M. GALLAGHER & F. MANCUSO | : | |
| PARTNERSHIP, ROBIN MANCUSO | : | |
| DeLUNA, JAMIE MANCUSO, | : | |
| FRANK MANCUSO AND | : | |
| CROSS KEYS MANAGEMENT, INC. | : | |
| | : | |
| APPEAL OF:  ROBIN MANCUSO | : | No. 3533 EDA 2017 |
| DeLUNA, JAMIE MANCUSO AND | : | |
| FRANK MANCUSO | : | |

Appeal from the Order Entered October 12, 2017,
in the Court of Common Pleas of Bucks County
Civil Division at No. 2016-07570

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　**FILED NOVEMBER 05, 2018**

Robin Mancuso DeLuna, Jamie Mancuso, and Frank Mancuso (collectively, "appellants") appeal from the October 12, 2017 order entered in the Court of Common Pleas of Bucks County that overruled and dismissed their preliminary objections to appellee Maryanne Gallagher's second amended complaint.[1]  After careful review, we affirm.

---

[1] The record reflects that on April 3, 2017, appellee filed a complaint against M. Gallagher and F. Mancuso Partnership and appellants.  Appellee filed her first amended complaint against the same defendants on May 22, 2017. Subsequently, on July 7, 2017, appellee filed her second amended complaint against these defendants, but erroneously titled the pleading as "First Amended Complaint."

The trial court set forth the following:

> On or about June 1997, Maryanne Gallagher (hereinafter "[a]ppellee") and Frank [Mancuso ("Frank")] created a business partnership (hereinafter "the Partnership") for the purpose of owning, managing, operating, and conducting a real estate brokerage business in Levittown, Pennsylvania.[Footnote 1] At the time of the Partnership's formation, Frank was the sole owner of the capital stock of Hearthside Realty, Inc.[Footnote 2] Hearthside Realty, Inc. was a Coldwell Banker franchisee operating under the name "Coldwell Banker Hearthside Realty."

>> [Footnote 1] The factual background is gleaned from the parties' respective pleadings in this case.

>> [Footnote 2] At the time of the Partnership's creation, Hearthside Realty, Inc. was known as "Hearthside Realtors, Inc."

> Under the terms of the Partnership, the Partnership was to operate as a branch of Coldwell Banker under the trade name "Coldwell Banker Hearthside Levittown Realty" pursuant to the Franchise Agreement in existence between Coldwell Banker as franchisor and Coldwell Banker Hearthside Realty ("CB Hearthside") as franchisee. Under the terms of the Partnership Agreement, Frank covenanted that he would continue to permit the Partnership to operate as a branch office of Coldwell Banker. Of particular importance to the instant matter is that the Partnership Agreement, entered into by and between [a]ppellee and Frank, contained an arbitration provision, to wit:

>> If any controversy or claim arising out of this Partnership Agreement cannot be settled by the Partners the controversy or claim shall be settled by arbitration in accordance with the rules of the American

Arbitration Association then in effect, and judgment on the award may be entered in any court having jurisdiction.

The Partnership Agreement provided that if Frank ever transferred by sale, gift or otherwise any of his capital stock of CB Hearthside without the consent of [a]ppellee, Frank was to be treated as a "withdrawing partner" under the Partnership Agreement. Pursuant to the Partnership Agreement, either Frank or [a]ppellee was permitted to withdraw from the Partnership at any time by giving one-hundred twenty (120) days advance written notice to the other of his/her intent to withdraw. Upon giving notice of withdrawal, the Partnership Agreement provided that the remaining partner would be given the option to purchase the withdrawing partner's share in the Partnership.

In or about 2013, Frank, who maintained a series of companies involved either directly or ancillary to the real estate industry, began restructuring many of his companies and business interests, including the Partnership. According to the Second Amended Complaint, unbeknownst to [a]ppellee, at some point during 2014, Frank allegedly transferred or sold some or all of his interests in the Partnership business to his children, Robin [Mancuso DeLuna ("Robin")] and Jamie [Mancuso ("Jamie")]. In anticipation of this restructuring, Robin became president of a newly-formed entity, Cross Keys Management, Inc. (hereinafter, "CK Management"). The Second Amended Complaint alleges that Frank never gave [a]ppellee written notice of his intention to withdraw from the Partnership. Appellee was also never given the opportunity to purchase Frank's interests in the Partnership as the Partnership Agreement required. Appellee was never asked to consent to the transfer of any interests to Robin or Jamie.

This corporate restructuring also substantially changed the operating dynamic of the Partnership. The restructuring removed so-called "Back Office Services" from all of the various Mancuso businesses

and their offices, and centralized those functions under the umbrella of CK Management, with Robin as President, Jamie as Vice President, and Frank as Secretary of the company. The restructuring also removed legal, accounting, financial, human relations and administrative functions from the Partnership, and centralized those functions within CK Management.

Following this restructuring, instead of all gross commission revenues from real estate sales of the Partnership being deposited by CB Hearthside into the accounts of the Partnership, as had historically been the case, management fees and other expenses were deducted from the Partnership's gross sales revenues and paid to CK Management before any net proceeds were released to the Partnership. The fees charged by CK Management for Back Office Services (the "Management Fee") were calculated as a percentage applied to and deducted from the revenues of each sale that was concluded by each entity. On or about 2013, [appellee] was informed by [appellants] that the Partnership would be charged a 15% Management Fee by CK Management, applied to the gross sales revenues for Back Office Services and other administrative costs.

Unbeknownst to [a]ppellee, this practice of deducting management and other fees from the Partnership's gross commission revenues began before the restructuring of CB Hearthside, under the stewardship of Robin. Despite being a 50% owner and general partner of the Partnership, [a]ppellee avers that she was given no information concerning what the costs and expenses of CK Management actually were or how those costs and expenses were being allocated among the various [businesses owned by appellants] and the Partnership. The Second Amended Complaint alleges that the costs and expenses of CK Management were grossly disproportionately assessed upon the Partnership.

On April 3, 2017, [a]ppellee filed a Complaint to which [a]ppellants filed preliminary objections. Shortly

thereafter, on May 22, 2017, [a]ppellee filed her First Amended Complaint to which [a]ppellants subsequently filed Preliminary Objections. On July 7, 2017, [a]ppellee filed a Second Amended Complaint to which [a]ppellants also filed Preliminary Objections seeking to submit Counts I, II, and V of the Second Amended Complaint to arbitration. Pursuant to the Preliminary Objections to [a]ppellee's Second Amended Complaint, on September 28, 2017, we held oral argument. On October 12, 2017, we issued an order overruling and dismissing [a]pellants' Preliminary Objections to [a]ppellee's Second Amended Complaint.

On October 26, 2017, [a]ppellants filed the instant appeal from this Court's October 12, 2017 Order. By Order dated November 1, 2017, we directed [a]ppellants to provide the Court with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On November 16, 2017, [a]ppellants filed their [Rule 1925(b) statement].

Trial court opinion, 12/22/17 at 1-4.

Appellants complain that the trial court erred in overruling and dismissing their preliminary objections to appellee's second amended complaint because the arbitration provision contained in the partnership agreement entered into between appellee and Frank Mancuso ("Partnership Agreement") requires that Counts I, II, and V be submitted to arbitration.[2]

---

[2] In their statement of questions involved, appellants framed the issues as follows:

> I.  Did the trial court err in overruling and dismissing [a]ppellants' preliminary objections to [a]ppellee's Second Amended Complaint and in finding that there is not a valid agreement in the Partnership Agreement [] for the

M. Gallagher & F. Mancuso Partnership (the "Partnership") signed between [a]ppellee and [a]ppellant Frank Mancuso to arbitrate Count I of [a]ppellee's Second Amended Complaint and in finding that the claims asserted in Count I of [a]ppellee's Second Amended Complaint are not within the scope of the arbitration provision in the Partnership Agreement, and in failing to transfer Count I of [a]ppellee's Second Amended Complaint to arbitration?

II. Did the trial court err in overruling and dismissing [a]ppellants' preliminary objections to [a]ppellee's Second Amended Complaint and in finding that there is not a valid agreement in the Partnership Agreement for the Partnership signed between [a]ppellee and [a]ppellant Frank Mancuso to arbitrate Count II of [a]ppellee's Second Amended Complaint and in finding that the claims asserted in Count II of [a]ppellee's Second Amended Complaint are not within the scope of the arbitration provision in the Partnership Agreement, and in failing to transfer Count II of [a]ppellee's Second Amended Complaint to arbitration?

III. Did the trial court err in overruling and dismissing [a]ppellants' preliminary objections to [a]ppellee's Second Amended Complaint and in finding that there is not a valid agreement in the Partnership Agreement for the Partnership signed between [a]ppellee and [a]ppellant Frank Mancuso to arbitrate Count V of [a]ppellee's Second Amended Complaint and in finding that the claims asserted in Count V of [a]ppellee's Second Amended Complaint are not within the scope of the arbitration provision in the Partnership Agreement, and in failing to transfer Count V of [a]ppellee's Second Amended Complaint to arbitration?

Appellants' brief at 5.

At the outset, we note that "[w]hile an order denying preliminary objections is generally not appealable, there exists . . . a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration." *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 184 (Pa.Super. 1999) (citation omitted). An order denying preliminary objections that alleges alternative dispute resolution and requests that the trial court enter an order to arbitrate the dispute is an interlocutory order appealable as of right pursuant to Pa.R.A.P. 311(a)(8), Pa.R.Civ.P. 1028(a)(6) and Note, and 42 Pa.C.S.A. §§ 7342(a), 7320(a)(1), and 7304(a). *Midomo Co.*, 739 A.2d at 184. Therefore, the trial court's October 12, 2017 order overruling and dismissing appellants' preliminary objections alleging that Counts I, II, and V of appellee's second amended complaint fall within the scope of the arbitration provision contained in the Partnership Agreement and requesting an order to arbitrate those counts is an interlocutory order appealable as of right.

"Our standard of review of an order of the trial court overruling [or granting] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *DeLage Landen Fin. Servs., Inc. v. Urban P'ship, LLC*, 903 A.2d 586, 589 (Pa.Super. 2006) (citation omitted; brackets in original). "When preliminary objections, if sustained, would result in the dismissal of an

action, such objections should be sustained only in cases which are clear and free from doubt." *Id.* (citations omitted).

To determine whether a trial court should have compelled arbitration, this court employs a two-part test. *Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa.Super. 2012). We must first determine whether a valid agreement to arbitrate exists. We must then determine whether the dispute is within the scope of the agreement to arbitrate. Whether a claim falls "within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." *Id.* (citation omitted). We determine the scope of arbitration by the intention of the parties as ascertained pursuant to the rules governing contracts generally. The determination involves questions of law and our review is plenary. *Id.*

> [Moreover, a]rbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

*Id.*, quoting *Cumberland-Perry Area Vocational-Technical Sch. v. Bogar & Bink*, 396 A.2d 433, 434-435 (Pa.Super. 1978).

Generally, only parties to the arbitration agreement are subject to arbitration. *Elwyn*, 48 A.3d at 461. A non-party, however, may fall within the scope of an arbitration agreement if that is the parties' intent. *Id.*

Here, the parties to do not dispute that a valid arbitration agreement exists between appellee and Frank Mancuso. The dispute is whether the claims set forth in appellee's second amended complaint alleging (1) breach of contract (Partnership Agreement) against Frank Mancuso at Count I; (2) unjust enrichment against appellants at Count II; and (3) breach of fiduciary duty against appellants at Count V fall within the scope of the arbitration provision contained in the Partnership Agreement.

The record reflects that appellee and Frank Mancuso ("Partners") entered into the Partnership Agreement on June 15, 1997. (Appellee's second amended complaint, 7/7/17 at Exhibit A, p. 1, ¶ 1.) The arbitration clause contained in that Partnership Agreement provides:

> If any controversy or claim arising out of this Partnership Agreement cannot be settled by the Partners, the controversy or claim shall be settled by arbitration in accordance with the rules of the American Arbitration Association then in effect, and judgment on the award may be entered in any court having jurisdiction.

*Id.*

Appellee's second amended complaint alleges, among other things, that appellants restructured various companies that they owned; that appellants created CK Management to centralize administrative functions of appellants' companies; that appellants placed the Partnership formed between appellee and Frank Mancuso under the CK Management umbrella; and that appellants charged management fees to the Partnership without appellee's knowledge or

consent. (Appellee's second amended complaint, 7/11/17 at 4-13, ¶¶ 17-81.) Count I of appellee's second amended complaint alleges that Frank Mancuso breached the Partnership Agreement by failing to provide appellee with the requisite notice of his withdrawal from the Partnership and his intention to transfer his interest to Robin Mancuso-DeLuna and Jaime Mancuso. (*Id.* at 13-14, ¶¶ 82-92.) Count II alleges unjust enrichment against appellants in that they charged management fees to the Partnership that caused the Partnership and appellee to sustain financial damage. (*Id.* at 15-17, ¶¶ 93-107.) Count V alleges that appellants breached the fiduciary duty that they owed appellee by placing the Partnership under the CK Management umbrella and charging it management fees without appellee's knowledge or consent which caused appellee to sustain financial damage. (*Id.* at 19-20, ¶¶ 122-128.)

A plain reading of the arbitration provision set forth in the Partnership Agreement demonstrates that it restricts claims subject to arbitration to those controversies or claims that "arise out of [the] Partnership Agreement." In determining that appellee's claims set forth in Counts I, II, and V of her second amended complaint fall outside of the scope of that arbitration provision, the trial court found that the second amended complaint "makes clear that the underlying controversy in this action arises not from a dispute limited to [a]ppellee and Frank [Mancuso] concerning the Partnership, but rather from the conduct of Frank [Mancuso] and third parties not subject to the original

Partnership Agreement." (Trial court opinion, 12/22/17 at 8.) Indeed, the claims set forth in Counts I, II, and V arise out of appellants' alleged conduct in which they restructured their businesses, created CK Management, placed the Partnership under the umbrella of CK Management, and charged management fees to the Partnership without appellee's knowledge or consent. It is that alleged conduct of all three appellants – and not a dispute concerning the Partnership Agreement between appellee and Frank Mancuso – that gives rise to appellee's claims.

With respect to appellee's breach of contract claim against Frank Mancuso, the trial court "recognize[d] that Count I is a breach of contract claim, which if it was the sole claim in this matter would be subject to the arbitration provision." (Trial court opinion, 12/22/17 at 7.) Although appellants seize upon this language, neither that phrase nor Count I of the second amended complaint can be read in a vacuum. A reading of the entire second amended complaint reveals that the factual allegations giving rise to all of appellee's claims as set forth in paragraphs 1 through 81 and incorporated into all counts, allege, among other things, that appellants restructured their businesses, that appellants created CK Management, that appellants placed the Partnership under CK Management's umbrella, and that appellants charged management fees to the Partnership without appellee's knowledge or consent. In the breach of contract count, appellee further alleges that Frank Mancuso secretly withdrew from the Partnership without

providing appellee with the requisite notice and that he secretly transferred all or some of his ownership interest to Robin Mancuso-DeLuna and Jaime Mancuso which, "among other conduct, breached his duty of good faith and fair dealing owed to [appellee.]" (Appellee's second amended complaint, 7/7/17 at 13-14, ¶¶ 82-92.) In its opinion, the trial court properly concluded that the claims set forth in appellee's second amended complaint "are inextricably linked to one another" because those claims arise from the alleged conduct of appellants acting in concert with one another. Because of this inextricable link, the trial court also properly concluded that "bifurcat[ion of] these proceedings would frustrate the public policy goals" of "swift and efficient judicial decision making." (Trial court opinion, 12/22/17 at 8, citing **Sch. Dist. of Philadelphia v. Livingston-Rosenwinkel, P.C.**, 690 A.2d 1321 (Pa.Commw.Ct. 2013) (finding that claims arising out of the same set of occurrences and transactions are not subject to arbitration where entities involved in the underlying action were not parties to the arbitration agreement).)

Therefore, the trial court did not commit an error of law when it overruled and dismissed appellants' preliminary objections to appellee's second amended complaint based on its finding that the claims set forth in Counts I, II, and V fall outside of the scope of the arbitration provision because the allegations clearly demonstrate that the "underlying controversy in this action arises not from a dispute limited to [a]ppellee and Frank [Mancuso]

concerning the Partnership, but rather from the conduct of Frank [Mancuso] and third parties not subject to the original Partnership Agreement." (Trial court opinion, 12/22/17 at 8.)

Order affirmed.

Ott, J. joins this Memorandum.

Bowes, J. files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/18

- 13 -