J-A04020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM WHITFIELD GARDNER, ANISH SHAH, RASESH SHAH, PRAVIN SHAH, VEENA SHAH, AND WARREN YU ON BEHALF OF VASCULAR ACCESS CENTERS, L.P. AND WILLIAM WHITFIELD GARDNER | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 2113 EDA 2018 |
| VASCULAR ACCESS CENTERS, LLC AND JAMES MCGUCKIN, M.D., | : : : : | |
| Appellants. | : | |

Appeal from the Order Entered, July 13, 2018,
in the Court of Common Pleas of Delaware County,
Civil Division at No(s):  CV-2016-000367.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and COLINS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 22, 2019**

This interlocutory appeal involves the trial court's refusal to compel arbitration in a derivative action.  Because the arbitration provision at bar does not encompass the plaintiffs' claims in this lawsuit, we affirm.

On January 13, 2016, the Limited Partners[1] of Vascular Access Centers, L.P. filed suit on behalf of Vascular Access Centers, L.P.  They sued the general partners – Vascular Access Centers, LLC and its owner/manager, Dr. James McGuckin, M.D. ("the General Partners").  The Limited Partners alleged Dr.

_____

[1] The Limited Partners are William Whitefield Gardner, Anish Shah, Rasesh Shah, Pravin Shah, Veena Shah, and Warren Yu.

McGuckin breached the limited partnership agreement by secretly hiring himself as the CEO of Vascular Access Centers, L.P. and siphoning off "millions of dollars of VAC's profits without the limited partners' knowledge or approval."  Limited Partners' Brief at 2.

After two years of discovery, resolution of summary judgment motions, and submission of pre-trial statements, the General Partners decided – on the day set for arguments on the motions *in limine* – to petition for arbitration. Two days later, the trial court heard testimony and arguments on that petition.

The General Partners argued the Limited Partners had injected an employment agreement between Vascular Access Centers, L.P. and Dr. McGuckin into this case by referencing it in a memorandum of law.  The General Partners quoted the Limited Partners, as follows:

> Defendants' mismanagement (perhaps more appropriately described as abandonment) violates §§ 6.7 and 6.11 of the Limited Partnership Agreement, [Dr.] **McGuckin's CEO Employment Agreement**, and basic and fundamental fiduciary duties established by Pennsylvania law.

General Partners' Petition to Compel Arbitration at 2 (quoting Limited Partners' memorandum of law opposing General Partners' motion *in limine*) (emphasis added by General Partners).  Dr. McGuckin's signature is on both sides of the employment agreement, as employee (i.e., CEO) and employer.  Thus, the parties agree that he hired himself as CEO via that employment agreement.

The trial court, concluding that lack of notice and consent on the part of the Limited Partners dictated that the arbitration terms could not bind them,

denied the petition to compel arbitration. Three days later, General Partners filed this interlocutory appeal.[2]

General Partners raise three appellate issues:

1. Even if the Limited Partners did not know about or consent to the arbitration provision in Dr. McGuckin's employment agreement when he signed it as Vascular Access Centers, L.P.'s general partner, is Vascular Access Centers, L.P. still bound by the arbitration provision?

2. Has Dr. McGuckin waived his right to arbitration by a delay in asserting it in the trial court?

3. Does this action fall within the scope of the arbitration provision, because the Limited Partners seek to submit the employment agreement at trial and argue that Dr. McGuckin breached that agreement?

*See* General Partners' Brief at 4-5.

In order to win this appeal, the General Partners must succeed on all three of their issues. We limit our analysis to the third issue, because it is dispositive in favor of the Limited Partners.[3]

---

[2] ***See*** Pennsylvania Rule of Appellate Procedure 311(a)(8) (allowing for an interlocutory appeal of any order that the legislature deems appropriate) ***and*** 42 Pa.C.S.A. § 7302(a)(1) (making any order denying a party's request to compel arbitration immediately appealable).

[3] We note that the trial court did not address General Partners' third issue, because it found the Limited Partners had no notice of the arbitration provision at issue. A trial court's reasoning does not bind this Court, because "an appellate court may uphold an order of a lower court for any valid reason appearing from the record. This jurisprudential doctrine stems from the focus of review as on the judgment or order before the appellate court, rather than any particular reasoning or rationale employed by the lower tribunal." ***Ario v. Ingram Micro, Inc.***, 965 A.2d 1194, 1200 (Pa. 2009).

The Appellant's third appellate issue contends the language of the arbitration provision is broad enough to compel Vascular Access Centers, L.P. and the Limited Partners to arbitrate their claims for breach of the limited-partnership agreement and Dr. McGuckin's alleged breach of his duties to Vascular Access Centers, L.P.  General Partners argue the Limited Partners "brought the claims and controversies of this case squarely within the ambit of the arbitration clause when [they] asserted a breach of the employment agreement and tied that assertion to the breach of fiduciary duty count." Appellant's Brief at 33.

"It is well-settled that the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for the court to decide." *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 637 (Pa. Super. 1998).  As with all questions of law, "our standard of review is *de novo*, and our scope of review is plenary." *Skotnicki v. Insurance Department*, 175 A.3d 239, 247 (Pa. 2017).

The arbitration clause at issue states as follows:

> Any claim or controversy arising out of or relating to this Agreement or any breach thereof shall be settled by arbitration . . . in accordance with the then-current rules of the American Arbitration Association before a panel of one arbitrator.

Dr. McGuckin Employment Contract at ¶9.

The General Partners correctly observe that the arising-out-of-or-relating-to language is "the broadest conceivable language from which it must

be concluded that the parties intended the scope of the submission to be unlimited." General Partners' Brief at 31 (quoting **Borough of Ambridge Water Auth. v. Columbia**, 328 A.2d 498, 501 (Pa. 1974). However, the unlimited scope of submission to arbitration is not truly limitless.

As the General Partners also acknowledge, the **Ambridge Water** Court went on to state that such language only applied to "any dispute which may arise between the parties **concerning the principal contract** . . . ." **Id.** (emphasis added). In other words, arbitration does not supplant the courts of common pleas as forums of unlimited jurisdiction over every conceivable case or controversy that might arise between the parties. An arbitrator has only limited, subject-matter jurisdiction over claims that truly arise out of or relate to the contract that contains the arbitration clause.

In a case similar to the one at bar, this Court found a plaintiff's claims for breach of fiduciary duty and common-law indemnification were "not inextricably entwined with the contract" containing the arbitration provision and so declined to compel arbitration. **Elwyn v. DeLuca**, 48 A.3d 457, 463 (Pa. Super. 2012). Mr. DeLuca was a board member of Elwyn, a non-profit corporation; he therefore owed Elwyn a fiduciary duty.

Mr. DeLuca was also the owner, president, and CEO of a construction company, which Elwyn hired to build a residential building. Mr. DeLuca, as owner of the construction company, entered into a standardized, construction contract with Elwyn. When Elwyn sued him, he asserted that the arbitration agreement in the standard contract compelled the trial court to transfer the

case to arbitration.  The trial court denied arbitration, and Mr. DeLuca took an interlocutory appeal.

Even though Mr. DeLuca's arbitration agreement used the same arising-out-of-or-relating-to language found in the arbitration provision now before us, this Court opined that:

> the basis of [Elwyn's] claim . . . related to [Mr. DeLuca's] actions as a board member:  while [Mr. DeLuca] "attended board meetings during and throughout the time in which [his construction company] was performing its work on the Project," he allegedly "never informed" [Elwyn] that [his company] had solvency issues, that it was not paying its subcontractors or suppliers, and that it "intended to misappropriate sums received from" [Elywn].  [Elwyn] asserted that [Mr. DeLuca's] intentional failure to inform was a breach of his duty to act without self-interest and to disclose material facts he knew were harmful to [Elwyn's] interests.  We agree with the trial court that the instant suit concerns [Mr. DeLuca's] duties to [Elwyn] as a Board member, and not [Mr. DeLuca's] involvement with [his construction company's] obligations under the contract.

***Elwyn***, 48 A.3d at 457, 463 – 464.  This Court concluded that the causes of action in Elwyn's complaint fell outside the scope of the construction contract and declined to send the matter to arbitration.  ***See id.***

We disagree with General Partners' revisionist interpretation of the procedural history and the causes of actions in this case.  Instead, we conclude that ***Elwyn*** controls.  Contrary to the General Partners' contentions, the Limited Partners did not allege in their amended complaint that Dr. McGuckin breached his employment agreement as CEO.  They alleged the General Partners breached their fiduciary duties to Vascular Access Centers, L.P.,

arising from their roles as the general partners. *See* Amended Complaint at 22. Those roles predate Dr. McGuckin's employment agreement and the arbitration terms therein.

The Limited Partners have further alleged the General Partners breached the limited-partnership agreement – not the CEO employment agreement. *See id.* at 26. The limited-partnership agreement also predates Dr. McGuckin's employment agreement and its arbitration provisions. We see no reason to apply the terms of the parties' newer contract to alleged breaches of a preexisting one, especially when the arbitration provision does not reference the older contract.

Whether Dr. McGuckin breached the CEO employment agreement is irrelevant to whether the General Partners breached the preexisting, limited-partnership agreement or their fiduciary duties. The employment agreement is only evidence that General Partners breached the limited-partnership agreement, because the Limited Partners claim that, by hiring himself as CEO, Dr. McGuckin violated the preexisting contract. Whether he discharged his duties under the employment agreement thereafter is irrelevant to whether his self-hiring was unlawful from the start. Here, the General Partners claim that the formation of the employment contract itself was a breach of the prior contract. Thus, this dispute arises out of and relates to the parties' prior contract, not their new one.

Moreover, the Limited Partners may prove their claim by testifying that Dr. McGuckin hired himself as CEO. They do not even need to admit the

employment agreement into evidence.  Thus, the arbitration provision in that employment agreement is a red herring.

As in **Elwyn**, we conclude that the instant suit concerns the General Partners' duties to Vascular Access Centers, L.P. as general partners, not Dr. McGuckin's obligations under his CEO employment agreement.  The trial court's denial of the petition to compel arbitration was correct.

Also, the General Partners' application to reconsider and vacate this Court's order striking certain arguments and supporting documents is denied.

Order affirmed.  Application to reconsider order denied.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/22/19